UNITED STATES v. CHICAGO GREAT WESTERN RY. CO.

(District Court, N. D. Iowa, E. D.    May 6, 1908.)

1. RAILROADS—SAFETY APPLIANCE ACT—CONSTRUCTION.

Under Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act March 2, 1903, c. 967, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885), a railroad company receiving cars to be hauled in moving interstate traffic, or in connection with other cars that are so used, is required to know at its peril that each of said cars is equipped with the safety appliances required by such act, and it is liable for the penalty prescribed therein for each car so hauled or used in moving interstate traffic, or in connection with other cars that are so used, which is not so equipped.

2. SAME—ACTION FOR VIOLATION—MEASURE OF PROOF REQUIRED.

An action by the United States to recover the penalty provided for a violation of Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act March 2, 1903, c. 967, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885), is a suit of a civil nature, and a preponderance of the evidence only is required to establish the cause of action.

3. SAME—CARS BECOMING DEFECTIVE WHILE IN USE—DUTY TO DISCOVER AND REPAIR DEFECTS.

If a railroad train used in moving interstate traffic when started is properly equipped with air brakes as required by Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act March 2, 1903, c. 976, § 2, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 886), or if cars so used are properly equipped with automatic couplers as therein required when started or when received by the company for transportation over its line, but from any cause either train or cars become defective so as not to comply with the law while being so moved, the company is required to immediately repair such defects as soon as discovered, or as soon as they could have been discovered by the exercise of reasonable care, if the means of repair are at hand; but, if not, the company may haul the same to the nearest repair point without being subject to the penalty for violation of the act.

4. SAME — TRAINS — INSUFFICIENT EQUIPMENT WITH TRAIN BRAKES — "SINGLE TRAIN."

A freight train scheduled to run regularly between points in different states is a single train throughout such run and at all times subject to the provisions of Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act March 2, 1903, c. 967, 32 Stat. 943 (U. S. Comp. St. Supp. 1907. p. 885), although some of the cars composing it may have been left and others taken on at different stations, and although after entering the second state the engine, caboose, and train crew may have been changed. In such case, if at any one or more points in the run a sufficient number of the cars composing the train are not equipped with air brakes to meet the requirement of the act, the railroad company is liable to the penalty imposed for its violation, but to one penalty only.

Action to Recover Penalties for Alleged Violations of the Safety Appliance Law of Congress.

Frederick F. Faville, U. S. Atty., James A. Rogers, Asst. U. S. Atty., and Luther M. Walter, Special Asst. U. S. Atty.

Hurd, Lenehan & Kiesel, for defendant.

REED, District Judge (charging jury). This suit is brought on behalf of the United States by the United States attorney for the Northern district of Iowa, against the Chicago Great Western Railway Company, to recover from that company certain penalties which it is alleged have been incurred by it because of its violation of a law of the United States commonly known as the "Safety Appliance Law." The acts of Congress (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174], as amended by Act March 2, 1903, c. 967, 32 Stat. 943 [U. S. Comp. St. Supp. 1907, p. 885]) and the orders of the Interstate Commerce Commission made pursuant thereto and in force at the time of the several acts alleged to have been committed by the defendant provide substantially as follows:

That from and after the 1st day of January, 1898, it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use upon its line of railroad any locomotive engine in moving interstate traffic not equipped with appliances for operating the train-brake system, or to run any train in such traffic that has not 75 per cent. of the cars in such train equipped with power or train brakes that can be operated by the engineer on the locomotive hauling such train, so that he can control its speed without requiring brakeman to use the common hand brake for that purpose. Also, that it shall be unlawful for any such common carrier to haul, or permit to be hauled or used, on its line of railroad, any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars, and which is not also provided with secure grab irons or hand holds on its ends or sides, for the greater security of the men in coupling and uncoupling cars. The provisions and requirements of this law apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith; and if any such common carrier shall run any train, or haul or permit to be hauled on its line

of railroad any car, in violation of any of such provisions, it shall be liable to a penalty of $100 for each and every such violation, to be recovered in a suit or suits to be brought on behalf of the United States by the United States attorney for the proper district, in the District Court of the United States having jurisdiction where such violation shall have been committed; and it is the duty of such United States attorney to bring such suits upon duly verified information being lodged with him of such violation having occurred; and it is also the duty of the Interstate Commerce Commission to lodge with the proper United States attorney information of any such violation as may come to its knowledge.

These provisions, gentlemen, and some others that it is not necessary to now call to your attention, are the laws of Congress, commonly known as the "Safety Appliance Law," which it is alleged have been violated by the defendant, and this suit is brought to recover of it the penalty of $100 for each of 10 alleged violations thereof.

The petition is in 14 counts, each of which alleges that the defendant railway company was in March, 1907, a common carrier engaged in interstate commerce by railroad among several of the states of the United States, and particularly between the states of Illinois, Iowa, Nebraska, and Minnesota. Counts 11 and 12, however, have been withdrawn, and they are not therefore to be considered by you. The remaining 12 counts charge the 10 violations relied upon by the plaintiffs for recovery, and it is important that you should carefully observe the nature of the several charges made in them. These charges may be classified as follows: First, those which charge the hauling or using of cars by the defendant when not equipped with safety couplers, or grab irons, as required by the law; and, second, those which charge the hauling of a train or trains of cars when 75 per cent. of the cars in such train or trains were not equipped with power or train brakes, as required by the law.

Counts 1, 2, 3, 4, 5, 6, and 13 and 14 are of the first class, and each charges that the defendant, in March, 1907, hauled upon its line of railroad, within the jurisdiction of this court, a certain car, particularly describing it, which car was then being used regularly in the movement of interstate traffic, and that it was hauled by the defendant on its line of railroad when it was not equipped with couplers that would couple automatically by impact and which could be uncoupled without the necessity of a man or men going between the ends of the cars, or with grab irons, as required by this law. Counts 7 and 8 belong to the second class. They both relate to one transaction, and allege that the defendant, in March, 1907, hauled on its line of railroad from Dubuque, in the state of Iowa, with one of its locomotive engines, a certain train, to wit, No. 73, composed of cars consigned from points in Illinois to points in Minnesota and Iowa, when 75 per cent. of the cars in such train were not equipped with power or train brakes that could be operated by the engineer of the locomotive engine drawing said train, and that would enable him to control its speed without requiring brakeman to use the common hand brake for that purpose. Counts 9 and 10 are also of the second class, and both relate to one transaction, and allege that in March, 1907, the defend-

'ant hauled upon its line of railroad into Dubuque, in the state of Iowa, with its own locomotive, a train, namely, No. 73, composed of cars consigned from a point in Illinois to points in the state of Minnesota, when 75 per cent. of the cars in that train were not equipped with power or train brakes that could be used and operated by the engineer of the locomotive engine hauling said train, as before stated.

Briefly, gentlemen, these are the acts charged by the United States to have been committed by the defendant, and which it is alleged constitute the several violations by it of this safety appliance law of Congress. The defendant admits that it is a railroad corporation engaged in interstate commerce by railroad among the several states, and that its line of railroad is a through highway over which interstate traffic was being continually hauled from one state to another in the United States, as alleged in the petition; but it denies each and every other allegation of the several counts of the petition. And thus are presented the questions of fact that you are called upon to determine by your verdict.

You will observe, gentlemen, that the only questions for you to consider and determine are:

First, did the defendant, at or about the time alleged, haul upon its line of railroad, within this district, one or more of the cars described in the petition, when used in interstate commerce or in connection with other cars that were so used, without being equipped with couplers or grab irons, as required by this law of Congress?

Second, did it haul a train or trains of cars upon its said line of railroad, some of which cars were being used in interstate traffic, without 75 per cent. of the cars in such train being equipped with power or train brakes, as required by said law?

If it did either of these acts, then it is liable to the penalty of $100 for each car so hauled, and for each train that it so run, and the plaintiffs are entitled to your verdict for the penalties incurred for each such violation; but, if it did not do either, then it is not liable and is entitled to your verdict.

This law, gentlemen, is a beneficent one, and is intended to protect the public generally, and persons and property that are being transported by railroad, and particularly is it intended to protect the life and limbs of employés engaged in the dangerous and hazardous business of operating railroad trains, and railroad companies engaged in such commerce are required to strictly comply with its provisions and obey this law. It was therefore the duty of this defendant, when it received the various cars described in the petition to be hauled and used upon its line of railroad in moving interstate traffic, or in connection with other cars that were so used, to know at its peril that each of said cars was equipped with the safety appliances required by this law, and if it hauled or used any of said cars when not so equipped to move interstate traffic, or in connection with other cars that were so used, then it is liable to the penalty of $100 for each and every car described in some count of the petition that it so hauled or used.

The burden of proof is upon the plaintiffs to prove clearly and satisfactorily to you, by the greater weight of the credible evidence, that the defendant has committed some one or more of the several

acts charged against it as being a violation of this law of Congress. They are not required to prove the same beyond a reasonable doubt as in a criminal case, for this is not a criminal action, but is a suit of a civil nature to recover the penalties prescribed for a violation of; the law. You are the judges, and the sole judges, of the credibility of the several witnesses who have testified before you, and of the weight that shall be given to the testimony of each. This is to be determined by you largely from the manner in which the witnesses have testified before you, their appearance when testifying, their interest, if any, or lack of interest, in the result of this controversy, their knowledge or lack of knowledge or means of knowing the facts about which they have testified, and all other matters appearing in the evidence which may affect or bear upon the credibility of the witnesses or the weight that shall be given to his testimony. You should not discredit the testimony of any witness solely because he is in the employ of either the government as an inspector of railroad trains or cars, or in the employ of the defendant railroad company; but you will determine the credibility of such witness and the weight to be given to the testimony of each as I have already said to you, and, when you have determined that, then you will determine where the greater weight of the testimony is upon these different questions of fact about which they have testified before you.

The inspectors of the government were not required to inform the employés of the railroad company, when they made the inspection of these cars, of the defects in the appliances, if any they discovered, and you should not discredit their testimony solely because they did not so inform them.

If from the evidence you find that the cars, or either of them, described in the petition or in some count thereof, were equipped with the requisite couplers and grab irons, and that they were in the condition required by the law when they were received by the defendant to be hauled upon its line of railroad, as stated, but during the time they were being so hauled the couplers or grab irons from any cause became injured or out of repair upon any of the cars, so that they were not in an operative condition, then the defendant would be required to immediately repair said defects and put the appliances in operative condition, if it could do so with the means and appliances at hand at the time and place when and where it discovered their defective and inoperative condition, or when such condition could have been discovered by the exercise of reasonable care on the part of its agents or servants charged with that duty. But if it did not at such time and place have the requisite means or appliances at hand to remedy such defect and put the couplers and grab irons in operative condition, then it would have the right, without incurring the penalty of the law, to haul such car or cars to the nearest repair point on its line where such defects could be repaired and the appliances put in operative condition. But if such defective or inoperative condition of the couplers and grab irons existed at a repair point on defendant's line, or at a place where such defects could have been remedied, then, if it hauled said car or cars from such place in such condition, it

would do so at its peril and be liable for the statutory penalty for so hauling or using such car described in any count of the petition.

In like manner, gentlemen, it was the duty of the defendant, when it started the train described in the petition, to be hauled upon its line of railroad into or out of the city of Dubuque, Iowa, to know at its peril that at least 75 per cent. of the cars in said train were equipped with air brakes, as required by the law, and, if that percentage of that train was not so equipped, then it is also liable for the penalty of $100 for the train described in the petition that it so hauled. But if you find from the evidence that 75 per cent. of the cars composing said train were equipped with air brakes, in an operative condition and so they could be operated by the engineer of the train when it left Chicago, but from any cause any of said air brakes afterwards become inoperative during the run, so as to reduce the percentage below 75 per cent., then it was the duty of the defendant to immediately repair such defect or defects and put the air brakes in operative condition as soon as the defects were discovered, or could have been discovered, by the exercise of reasonable care on the part of the agents or servants of the defendant charged with that duty, if such defects could have been so repaired by the means and appliances at hand for that purpose when the defect or defects were discovered. But if such means and appliances were not at hand to so remedy the said defects, the defendant would have the right, without incurring the penalty of the law, to haul the cars upon which said air brakes so became defective or inoperative to the nearest repair point on its line of railroad where such defects could be repaired and the cars and air brakes put in an operative condition. But if such defects existed at a repair point or other place where they could be repaired, as before stated, then, if the defendant ran the train from such place when 75 per cent. of the cars therein were not so equipped with operative air brakes as required by law, it is liable for the penalty of $100 for so running such train.

If you find from the evidence that train No. 73, mentioned in counts 7 and 8 and in counts 9 and 10 of the petition, was scheduled to run regularly as one train between Chicago and Oelwein, and that it did so run between said points, then I am of the opinion, and so charge you, that within the meaning of this law it was but a single train, though certain of the cars composing it when it started on the run may have been set out and others placed therein at different stations along the line, and even though the train crew and the engine and caboose were changed and another engine and another crew hauled it from Dubuque to Oelwein. If therefore you find that 75 per cent. of the cars in that train were not equipped with air brakes in an operative condition, and so they could be operated by the engineer of the locomotive hauling the train, at any point on the defendant's line of railroad over which the train was run from Chicago to Oelwein, so that he could control the speed of the train at all points on said run while hauling said train, without requiring the brakemen to use the common hand brakes for that purpose, then the defendant incurred and is liable for the penalty of $100 for running the train when it was not so equipped.

It appears from the evidence that some of the cars alleged to have been hauled or used by the defendant in violation of the law were not its own cars, but were the cars of some other company. This fact is wholly immaterial. If such cars were in defective condition, as contended on behalf of the plaintiffs, no matter to whom they belonged, the defendant would incur the same penalty in hauling such cars when in such defective condition that it would if they were its own cars. Each car hauled by the defendant must have been equipped with the required couplers and hand holds so that it could be coupled to, and uncoupled from, other cars by its own couplers, irrespective of the couplers or hand holds of the other car to which it was coupled, or was to be coupled.

By "interstate traffic" is meant, as you all know, traffic that is moved from one state or territory into or through some other state or territory.

Now, gentlemen, with these general rules in mind, I call your attention particularly to the several counts of this petition.

The first count alleges that the defendant, on or about March 26, 1907, hauled on its line of railroad one car, to wit, A. V. R. No. 371589, said car being one regularly used in the movement of interstate traffic, but at the time of said violation being empty, and that defendant hauled said car over its line of railroad from Dubuque, Iowa, in an easterly direction, when the coupling and uncoupling apparatus on the B end of said car was out of repair and inoperative, the bottom clevis to the chain connecting the lock pin or lock block to the uncoupling lever being missing on said end of said car, thus necessitating a man or men going between the ends of the cars to uncouple or couple them, and when said car was not equipped with couplers coupling automatically by impact as required by the laws of Congress. Now, gentlemen, you have heard the testimony of the witnesses on behalf of the plaintiffs and the defendant in regard to that car and the defect that it is claimed was in its coupling device, and it has been explained to you what is meant by the "A" and the "B" ends of a car; and whether or not that coupler was in that condition is purely a question of fact that you must determine from the evidence before you. What do you say, upon a careful and conscientious consideration of all the testimony upon that point, is the truth in regard to that car? And as you find the truth to be, from the evidence before you, so let your verdict be in regard to that car.

The second count of the petition is in exactly the same form, and alleges in exactly the same language that the defendant, on or about the 27th day of March, 1907, hauled on its line of railroad one car, to wit, C. & O. No. 26109, over its line of railroad from Dubuque, in an easterly direction; the top clevis pin to the chain connecting the lock pin or lock block to the uncoupling lever being missing on one end of said car. In the same manner as I have before stated, you must determine from the testimony what is the truth in regard to that car.

The third count is in exactly the same language, and alleges that the defendant hauled upon its line of railroad a Michigan Central car

No. 5631 from Dubuque, in the state of Iowa, in an easterly direction, the lock pin being broken on the B end of said car.

The fourth count is exactly the same as the three preceding counts, and alleges that on or about the 27th day of March, 1907, the defendant hauled C. & P. car No. 1455 on its line of railroad from Dubuque Iowa, in an easterly direction, when the lower clevis to the chain connecting the lock pin or lock block in the coupler on the B end of said car was out of repair and inoperative.

The fifth count is the same as the others, and describes defendant's own car No. 10706, and alleges that the coupling at the A end of said car was out of repair and inoperative.

The sixth count alleges in like manner that defendant hauled its own car No. 42102 over its line of railroad from Dubuque, in the state of Iowa; but it does not allege in which direction that car was hauled. That is the car, as I remember the testimony, that was hauled from the brewery in Dubuque, loaded with beer, to some point beyond Oelwein. The fact that that car was hauled wholly within the state of Iowa is not material, if in the same train that it was hauled there were other cars loaded with traffic from a point without the state, or from a point within the state consigned to a point without the state.

Count 14, the last in the petition, is of the same nature, and it alleges that defendant hauled a car, described as "A. G. S. No. 2396," from Oelwein, in the state of Iowa, in a westerly direction; the chain connecting the lock pin or lock block to the uncoupling lever being broken on the B end of said car.

The thirteenth count is the one that alleges that the car hauled was not equipped with a proper hand hold.

These, gentlemen, are the various counts in regard to the hauling of the cars; and I have sufficiently referred to the hauling of train No. 73. The view I take of that matter is that there can be but one penalty of $100, at most, recovered for the hauling of the train. Of course, if the company did not haul that train with the defective air brakes as alleged, if you find that the government has failed to prove that fact, there can be no recovery for that. But the utmost that can be recovered is $900; that is, $100 for each of the eight cars that were hauled and $100 for the train. If you find the plaintiffs entitled to recover, of course, you must return your verdict accordingly. I have prepared forms of a verdict which I will send to you by the bailiff, one of which you will use to express the verdict you agree upon.

When you retire, select one of your number as foreman, and, when you have agreed upon your verdict, have your foreman sign the verdict you agree upon and return it into court.

NOTE.—The verdict was for the government upon nine counts.