WESTERN UNION TELEGRAPH COMPANY *v.* TURNER.

4-3626

Opinion delivered January 7, 1935.

98

*Francis R. Stark,* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Malcolm T. Garner* and *Sam T. & Tom Poe,* for appellee.

JOHNSON, C. J. To compensate the destruction of his growing crops in July, 1932, by overflow waters, appellee, a landowner, instituted this action against appellant in the circuit court of Pulaski County.

The theory upon which appellee sought recovery was that in March, 1932, appellant, without right or authority, carelessly and negligently dug a hole six or eight feet in depth and eighteen inches or two feet in diameter and placed a telegraph pole therein, in the top or crown of Byrd Levee, which levee had theretofore been constructed by property owners for the protection of their properties from overflow waters, thereby so weakening said levee that it was caused to break prematurely or before the overflow water reached a point within two feet of the top or crown thereof, thereby allowing overflow water to inundate and destroy his growing crops.

Appellant defended the suit, first, upon the theory that the July, 1932, overflow was due solely to the act of God. Secondly, that the damage to appellee's crops, if any, by overflow water in July, 1932, had its origin in a watershed around Grassy Lake, which territory was wholly independent of, and had no connection with, the watershed which was protected by the Byrd Levee. Third, that appellant was granted the right to enter upon said Byrd Levee and set a telegraph pole therein by agreement with the railroad company which owned the land upon which Byrd Levee was built. Fourth, that the digging of the hole and the setting of the telegraph pole therein by appellant, as shown by the uncontradicted testimony, did not constitute actionable negligence.

During the trial appellant admitted that in March, 1932, it dug a hole and set a telegraph pole therein in the top or crown of Byrd Levee. The uncontradicted testi-

mony shows that between July 3 and 10, 1932, appellee's land and growing crops thereon were inundated by overflow waters, and his growing crops were practically destroyed.

Upon the threshold of the case, it may be said that, if the hole dug by appellant in the top or crown of Byrd Levee so weakened it as to hasten its break by overflow waters piled against it, and this break in the levee was the proximate cause of the inundation and destruction of appellee's growing crops, appellant is liable therefor. The applicable rule is stated in *Gulf Pipe Line Co.* v. *Bailey* (Tex. Civ. App.) 40 S. W. (2d) 938, as follows: "In the facts, it was the duty of the appellant in running the pipe line to have taken precaution to avoid any weakening in the levee, being charged with notice, as it was, that at this section of the levee great volumes of water were thrown against the embankment in the usual freshet and flood times in the winter months because of the necessary leveeing of the river in an 'elbow shape,' as shown by the proof, there was a choice of modes of running the pipe line that would have avoided a break in the levee in flood times." See also *Gulf Pipe Line Co.* v. *Smith* (Tex. Civ. App.) 42 S. W. (2d) 812.

Under the rule thus stated, the following questions of fact arise. First, did the digging of the hole in the top or crown of Byrd Levee and placing a telegraph pole therein so weaken it as to hasten its breaking in July, 1932? Secondly, if so, was the break the proximate cause of the inundation and destruction of appellee's growing crops? The first question presents merely a question of fact for the jury's consideration. Mr. Byrd, a witness for appellee, testified that Byrd Levee broke at the point where this post-hole was dug by appellant between 8:30 and 9:30 A. M., July 4, 1932, and that the break occurred at a time when the flood-water was not within two feet of the top or crown of Byrd Levee. This witness further testified that he was at the scene of this overflow from beginning to the end and that the north bank of Pennington Bayou did not overflow at any time. A witness, Dave Williams, testified that he was present when Byrd Levee broke at the point where appellant set the tele-

graph pole; that it occurred between 8 and 9 A. M., July 4, 1932, and at a time when the flood-water was not within three feet of the top of Byrd Levee. Gathan Poe testified that he was at the Byrd Levee about 10:30 or 11 A. M., July 4, 1932, and at that time the overflow water was not over either the north bank of Pennington Bayou or the Byrd Levee. Sam Jones testified that he saw Byrd Levee break the morning of July 4, 1932, and at that time the flood-water was two feet below the top or crown of Byrd Levee. A Mr. Richardson, a civil engineer, made a topographical survey of the flood area, and he testified that the north bank of Pennington Bayou did not overflow during the July, 1932, high water. This witness also presented a map showing contours and elevation points, and according to his explanation it demonstrates that the north bank of Pennington Bayou did not overflow. True, eminent civil engineers testified on behalf of appellant that the whole of Byrd Levee and the north bank of Pennington Bayou were inundated during the overflow period of July 3 to 10, 1932; however, this testimony was not undisputed as urged by appellant. It was flatly contradicted by Mr. Richardson and his contour and elevation map, heretofore referred to. This map demonstrates that the north bank of Pennington Bayou and Byrd Levee did not overflow. The witness said: ''My survey is as nearly correct as it can be made. It couldn't overflow the banks if my high water line is right.'' Thus, it definitely appears that all the civil engineers do not agree upon the point discussed; therefore this was peculiarly a question of fact for the jury's consideration.

Moreover, were it conceded that all the expert witnesses introduced in the case agreed upon conclusions as argued by appellant, the jury would not necessarily have to so find the facts to be, because such testimony may be controverted by any other competent evidence. *St. Paul Fire & Marine Ins. Co.* v. *Green,* 181 Ark. 1096, 29 S. W. (2d) 304. Not only this, but, were it conceded that all the expert testimony offered by both parties was in full accord and agreement and not contradicted by any other expert evidence, yet the jury would not be bound by such

testimony. 11 R. C. L. 586 states the rule as follows: ''Even if several competent experts concur in their opinions, and no opposing expert evidence is offered, the jury are still bound to decide the issue upon their own fair judgment.'' See Ann. Cas. 1914D 368 and note; 45 L. R. A. (N. S.) 181 and note. The trial court specifically instructed the jury on this point, to the effect that, if the north bank of Pennington Bayou and Byrd Levee were overflowed and this was the proximate cause of the inundation and destruction of appellee's crops, they should find for the defendant. On the other hand, that, if they found that the levee was weakened by reason of the digging of the hole, and the levee broke because of such weakened condition, and this was the proximate cause of the inundation and destruction of appellee's crops, they should find for appellee. The jury determined the question of fact adversely to appellant's contention, and we are unwilling to say that the jury's finding is not supported by substantial testimony.

On the second question as to whether or not the rent in Byrd Levee was the proximate cause of the inundation and destruction of appellee's growing crops, much testimony was introduced. Appellant's primary contention is that the overflow was due solely to the act of God or an unprecedented rainfall in that vicinity. On this point Mr. Byrd testified that the rains on July 3 and 4, 1932, were not unusual ones. Mr. Turner testified that the rain during the same period of time was a hard one, but he had seen many rains in that vicinity just as hard. Walter E. Wilson testified: ''We have had larger rains than this one in July, 1932, but the levee system always took care of them.'' Dave Williams testified that he had seen many rains just as hard as this one in that vicinity since the year 1925, the year in which the levee was first built. Gathan Poe testified that we have had just as hard rains and even harder ones than this one in that vicinity. Sam Jones testified we have had just as hard rains in that vicinity as this one, but they never before overflowed appellee's land. Frank Lester testified that there had been harder rains in that vicinity than this one on July 3 and 4, 1932, since the Byrd Levee was built, but that

they had not broken the levee. All the testimony reflects that Byrd Levee was first constructed in 1925. True, witnesses on behalf of appellant advanced conclusions and testified to facts tending to contradict the testimony heretofore set out in reference to an unprecedented rainfall on July 3 and 4, 1932, but this presented purely a question of fact for the jury's consideration and judgment. On this point, the jury was instructed in concise and definite terms, and, as we understand the record, appellant urges no objections to the trial court's presentation thereof, and, since the jury has determined the contention adversely to appellant's contention, we are not at liberty to interfere, the jury's verdict being supported by substantial testimony.

Appellant's next contention is that the July, 1932, overflow was due solely to the inherent nature of the drainage system of this watershed. A simple problem in hydraulics is urged upon us as conclusive of all the questions here presented. The problem is: That the railway trestle which spans Pennington Bayou admits the free passage of 930 square feet of water, that Pennington Bayou below the trestle and to the floodgate therein had only an average capacity of 750 square feet of water, and that the floodgate at the mouth of Pennington Bayou, which permits the water to flow into the Arkansas River, has a capacity of 160 square feet of water only; therefore it is said that this was the sole cause of the overflow of appellee's lands and growing crops. This was a persuasive argument to present to the jury, as the triers of fact, but it is certainly not conclusive or decisive of all the questions here presented. The jury knew, as we all know, that a one-fourth inch nozzle will admit the passage of a one-inch stream of water passing through an iron pipe or rubber hose. The restriction of the water's flow when hastened by pressure increases the velocity of the flow. Mr. Lund, a civil engineer, and a witness introduced by appellant, admits this to be the law of nature, and that he had it in mind when these levees were constructed under his supervision in 1925, and on this point he said: ''This floodgate was sufficient to carry off the water that was com-

ing down." Thus it definitely appears that this was a question of fact for the jury's determination, and again we must say that, since the jury's finding is supported by substantial testimony, we cannot and should not interfere.

Next, it is urged that the inundation and destruction of appellee's growing crops was proximately due to flood-waters which came from the north or in the region of Grassy Lake. This contention is likewise controverted by a number of witnesses. Mr. Byrd testified that the water first broke the Byrd Levee at the point where the telegraph pole was set in March, 1932, then flowed north along a ditch by the side of the railroad right-of-way thence across his field, and that no water moved in any other direction in that vicinity until Wednesday of that week. Mr. Martin testified that the water which overflowed appellee's crop did not come from the north, but from Pennington Bayou through the break in the Byrd Levee. Mr. Coleman testified that the water which destroyed appellee's crops did not come from the north but flowed from the Byrd farm. Mr. Toy testified that appellee's crops were destroyed by water from Pennington Bayou and not by water from the north. To the same effect is the testimony of Mr. Wright and other witnesses. This question was likewise presented to the jury by specific instructions of the trial court, and we are unwilling to say that the jury's finding is not supported by substantial testimony.

Finally it is contended that appellant was granted the right to set its telegraph poles in Byrd Levee by specific grant from the owner of the fee upon which the levee was built. We have been cited no authority supporting this novel position, and our limited search reflects none supporting it. It may be said however that common right and fairness impels the conclusion that no such right existed in appellant or the owner of the fee. It is universally conceded that every one must so use his property as not to inflict injury upon an adjoining owner, and this is all sufficient for the disposal of this contention.

It may be said that all the contentions urged upon us for reversal were merely questions of fact for the

consideration and judgment of the jury. The trial court correctly charged the jury in reference to the law of the case, and on all material points the jury's verdict is supported by substantial testimony, therefore, under numerous opinions of this court, should not be disturbed on appeal.

No error appearing, the judgment is affirmed.

SMITH, McHANEY and BUTLER, JJ., dissent.