UNIONAID LIFE INSURANCE COMPANY *v.* BANK OF LINCOLN.

4-3887

Opinion delivered June 3, 1935.

*Duty, Duty & Duty,* for appellant.

*Karl Greenhaw,* for appellee.

BAKER, J. Mutual Aid Union issued to Andrew J. Spears a certificate of insurance in May, 1912, payable to his wife, Sarah V. Spears, as beneficiary. This certificate was kept in full force and effect until 1926. The August assessment of that year was not paid, and, on account of the delinquency beyond the period of grace of thirty days, the certificate lapsed. The insured was subject to reinstatement upon furnishing a certificate of good health. This was not a matter of right, but more strictly one of favor and discretion to be exercised by managing officers of the insurance organization.

In October, when the lapse was discovered by the Bank of Lincoln, to which the certificate had been assigned, as security for debt owing by the insured, it made remittance of assessments due. The remittance was returned with letter calling attention to the lapse.

Immediately negotiations began, on the part of the officers of the bank, to reinstate the insurance contract. The officers of the insurer indicated by correspondence a favorable consideration of application for reinstatement ''only in the event Mr. Spears is in good health and can certify thereto.'' With the letter, from which the above-quoted phrase is taken, a health certificate was inclosed. The health certificate, when blanks were filled and signed, was as follows:

"Form 0-227-5M-11-24                        RD JTW
                                            10-19-26
"817-63
                    "Health Certificate
                "To Be Signed by the Member
                    "Rec'd Oct. 22, 1926.
"Secretary, Mutual Aid Union,
        "Rogers, Arkansas,          Andrew J. Spears
"Dear Sir:
    "I am in receipt of your advice that my Certificate
No. 885, Circle No. 15, has become delinquent for non-
payment of assessment.
    "I hereby make application to have this certificate
again put in good standing, and for that purpose can
truthfully certify that I am in good health.
    "I authorize you to attach this certificate to my ap-
plication for membership, and agree that it shall become
a part thereof and a warranty by me as to the statements
concerning my physical condition.
                        "Signed   A. J. Spears,
                                    "Member.
"Date 10-20-26."

The certificate of insurance was reinstated upon re-
ceipt of the above health certificate. All assessments, or
monthly premiums, were thereafter paid till the death
of the insured in June, 1932. This was nearly six years
after the reinstatement.

During the last part of the year of 1926 the Mutual
Aid Union found itself in a failing condition, by reason
of inadequate rates and increased mortality among its
members. Before a failure or insolvency was declared,
it transferred all its property and business to appellant.
The Unionaid Life Insurance Company assumed the lia-
bility for payment of benefits to "all living contributing
members and policyholders of the reinsured association,
in good standing in said association on the 1st day of
April, 1927," under such limitations and conditions as
were set out in the contract. It is not necessary to state
more definitely these conditions, except to say that the
pertinent condition in this controversy was that the re-
insurer "shall further be subrogated to each and every

defense that would have been available to the reinsured association in the conduct of its business.''

Long prior to this contract the insured, with the consent of Mutual Aid Union, had made his insurance payable to Bank of Lincoln, as its interest might appear, and any balance to his administrator, for his heirs.

Soon after the Unionaid Life Insurance Company took over the business acquired from Mutual Aid Union, the insured's beneficiary began paying the higher rate of monthly assessments or premiums required to make the policy worth one thousand dollars at death of insured. The total paid by the Bank of Lincoln in premiums is $722.43.

From the proof of death of insured, in June, 1932, facts were disclosed from which the insurer learned for the first time that in August, 1925, A. J. Spears had suffered from a stroke of paralysis. He later died from a similar attack.

In answer to the complaint filed to collect the insurance, the defendant pleaded that the reinstatement of the lapsed policy, in October of 1926, was procured by false and fraudulent statements and representations as to his good health, in application above quoted. Other issues were tendered, not here on this appeal, but on account of which the cause was transferred to the chancery court for trial.

It will be observed from the detailed statement that the sole issue tendered on this appeal arises out of the certificate of good health, the basis for the reinstatement of the lapsed policy.

It is easy to surmise that, if the insurer had learned, prior to the act of reinstatement, that insured had suffered from this stroke of paralysis, about fifteen months prior thereto, the reinstatement would have been refused. No inquiry was then made as to previous condition of health, nor is there anything in the correspondence or certificate that indicated that such information was germane or desirable.

A great deal of testimony was introduced upon the trial of this case tending to show the condition of health of A. J. Spears in October, 1926, when he signed the

application for reinstatement of his policy. While this proof may be said to show conclusively that at that time, and perhaps continuously thereafter till his death, he showed the effect of the paralytic attack from which he suffered in 1925, in that he did not have normal use of his left leg and left arm, and his face was somewhat drawn, we cannot say as a matter of law that the insured was not in fact in good health. Physicians who testified in the case said that the stroke was brought on by reason of a bursted blood vessel causing a clot upon the brain, but it was also testified that this was most probably absorbed, and that Mr. Spears regained the normal condition of his health, though not the normal use of leg and arm. One of the physicians illustrated the condition by saying that, if the insured had suffered from a broken leg, he might have continued to limp thereafter, though entirely well.

It is sufficient, for the purpose of this suit, to say that there was testimony tending to prove the condition of Mr. Spears in 1926 when his policy of insurance was reinstated, and apparently somewhat contradictory, one part with another. Our view of this situation is such that we consider this as a question of fact properly to be determined by the trial court.

On this account it is unnecessary to quote from, or abstract, this great volume of proof considered by the trial court.

Upon consideration of the testimony adduced, even if we construed the application for reinstatement as an absolute warranty, it still remains that there was a question of fact for determination by the chancellor. We are required, however, to give to the testimony its strongest probative value to sustain the decree.

We cannot find, and do not believe, that there were willful misstatements of fact by the insured as to his condition at the time of reinstatement. Under conditions such as these which are presented to us upon this appeal upon this matter of good health, the rule announced by this court in *Modern Woodmen of America* v. *Whitaker*, 173 Ark. 921, 293 S. W. 1045, is controlling. For other authorities see *U. S. F. & G. Co.* v. *Maxwell*, 152 Ark. 64,

237 S. W. 708; *Metropolitan Life Insurance Company* v. *Johnson,* 105 Ark. 101, 150 S. W. 393; *American Life & Accident Association* v. *Walton,* 133 Ark. 348, 202 S. W. 20; *Lincoln Reserve Life Insurance Co.* v. *Smith,* 134 Ark. 245, 203 S. W. 698; *Old American Insurance Co.* v. *Hartsell,* 176 Ark. 666, 4 S. W. (2d) 25.

It may be well to observe, in conclusion, that at the time of the death of Spears, he was more than 76 years old. Some of the witnesses who had observed his condition indicated that his mental condition at that time and prior thereto had not been as sound as in former years, but this may have been attributable directly to his age.

Appellant relies most strongly upon testimony of experts. Such testimony, however, was for the court's interpretation to the same extent as was that of lay witnesses.

*The Western Union Telegraph Co.* v. *Turner,* 190 Ark. 97, 77 S. W. (2d) 633.

We are of the opinion the trial court's decree was well supported by the testimony, and should be affirmed.

It is so ordered.