American Refrigerator Transit Company *v.* Stroope.

4-4056

Opinion delivered December 9, 1935.

*R. E. Wiley, Fletcher McElhannon* and *Henry Donham,* for appellants.

*Pace & Davis, J. H. Lookadoo* and *Tom W. Campbell,* for appellee.

Humphreys, J. This is an appeal from a judgment for $30,000 rendered in favor of appellee against appellants in the circuit court of Clark County on account of

an injury received by him on July 29, 1934, through the alleged negligence of appellants in allowing a piece of ice to fall from a loading dock or platform, that struck him on the back while he was on the ground below inspecting and unchoking a drain pipe of a refrigerator car that was being iced by employees of the American Refrigerator Transit Company at Gurdon.

Appellant Tate was served with summons in Clark County, where he resided, and the American Refrigerator Transit Company was served with summons by delivering a copy thereof to its designated agent for service in Pulaski County. The American Refrigerator Transit Company filed a motion to quash the service upon it, which was overruled by the court over its objection and exception, and its rights thereunder, if any, were properly saved throughout the trial.

An answer was filed by appellants, denying the material allegations of the complaint.

When the case was called for trial, appellants filed a motion to quash the panel of the petit jury, alleging that one of the jury commissioners which selected the petit jury had served in that capacity within four years and was ineligible under act 161 of the Acts of 1933 to again serve. It was also alleged in the motion that the three jury commissioners had selected, upon the panel, naming them, several persons who had served upon petit and grand juries within the past two years and were ineligible under said act to again serve. The court excused from the panel those persons who had served on grand and petit juries within two years previous and overruled the motion of appellants to quash the entire panel, to which latter action of the court appellants objected and excepted.

Appellants first contend that the judgment should be reversed because the trial court erred in overruling the motion to quash the entire panel of petit jurors. It is argued in support of this contention that one of the commissioners who had assisted in the selection of the panel had previously served in this capacity within four years prior thereto, and that, under the provisions of act 161

of the Acts of 1933 he was ineligible to serve as a jury commissioner within four years from the date of his previous service. This depends on whether the act relates to the service of a commissioner prior to its passage or whether to his service in that capacity after its passage. The language of the act is as follows:

"From and after the passage of this act, no citizen of this State shall be eligible to serve as a jury commissioner oftener than one term every four years."

The general rule is that statutes should be construed as having prospective operation only, unless it is definitely expressed or clearly and necessarily implied in such statutes that they are to have retroactive effect. *Fayetteville Building & Loan Association* v. *Bolin,* 63 Ark. 576, 40 S. W. 710; *Black* v. *Special School District No. 2,* 116 Ark. 472, 173 S. W. 846-1104; *Dulaney* v. *Continental Life Insurance Co.,* 185 Ark. 517, 47 S. W. (2d) 1082; *Lacefield* v. *Taylor,* 185 Ark. 648, 48 S. W. (2d) 832.

There is no language or clear and necessary implication in act 161 of the Acts of 1933 supporting the construction that the Legislature intended for it to operate retrospectively. The language used is clear and unambiguous that a citizen shall be disqualified from serving as a jury commissioner oftener than once every four years after the passage of the act. The undisputed evidence shows that the jury commissioner in question in the instant case never served in that capacity after the passage of the act until he assisted in the selection of this particular panel of petit jurors. The trial court did not err in overruling appellants' motion to quash the entire panel.

Appellants next contend for a reversal of the judgment because the trial court erred in giving appellee's requested instructions Nos. 1 and 6, and in refusing to give appellants' requested instructions Nos. 2 and 3.

The giving of instruction No. 6 was not made a ground of the motion for a new trial, and the alleged error in giving same cannot be considered on this appeal. Appellants argue that it was error to give appellee's requested instruction No. 1 and to refuse to give appellants'

requested instructions Nos. 2 and 3 because no evidence was adduced to support a finding of negligence on the part of Raymond Tate, who was appellee's co-employee and who was sued jointly with the American Refrigerator Transit Company, their employer, for negligently causing the injury inflicted upon appellee. The evidence adduced, stated in the most favorable light to appellee, in substance, (adopting, in part, appellee's statement of facts) is as follows:

The appellee, who was in the employ of appellant American Refrigerator Transit Company on the night of the 29th of July, 1934, with a crew of seven other men, engaged in re-icing a refrigerator car at Gurdon, was injured. The car was being re-iced at a loading dock or platform at the junction of the Womble Branch Line with the main line of the Missouri Pacific Railroad. The loading dock was built for the purpose of re-icing cars, and was about 250 feet long from north to south and was about thirty feet wide. The railroad tracks ran on either side of the dock. The dock on the east side was about 17 feet high, the platform of the dock being about even with the top of the refrigerator car standing on the track, making it convenient to put ice in the top of the car from the platform of the dock. In the roof of the car there were four holes to receive the ice, two at each end of the car. Over these holes there were lids that were opened when the car was to be re-iced. On the west side of the dock, the railroad tracks were built up so that the doors of the refrigerator cars carrying ice were even with the platform. The ice in these cars came in blocks weighing 300 pounds each. When this ice was removed to the platform, the 300-pound blocks were cut into three 100-pound blocks by the crew, to enable them to more easily put the ice into the refrigerator car. Between the top of the refrigerator car and the top of the platform there was a space about 16 inches in width. The method adopted to put the ice in the refrigerator cars was by using pike poles to push the ice across the platform and by giving it enough momentum to cause the ice to leap over the space between the platform and the car and go into the

hole in the top of the car. The pike poles were of wood, four or five feet long, with a metal pike in the end of them, the end being inserted in the ice while pushing it. There are four drain pipes near the corners of the refrigerator car, and these pipes are used to drain the water out of the car made by the melting ice, and frequently these pipes become stopped up or clogged, and it is then necessary to open them up. On the night of the injury there was only one car to be re-iced. This car was brought in on the Womble branch, and the dock crew, while waiting for it to arrive, were engaged in taking the ice out of the cars and cutting the same into smaller blocks. When the car was seen approaching, Mr. Kinman, the foreman of the gang, directed appellee, Stroope, to go down and examine the drain pipes of the car and open up any of them that might need it. This instruction to appellee was given in the presence of appellant Tate and the other members of the crew, and they all saw him go below to perform this task. It had been the rule, promulgated by the foreman of the crew, and universally observed in the past, that no ice should be moved from the platform to the car while any one was below inspecting the drain pipes, and appellant Tate testified that he knew this to be the rule. The drain pipes were located directly beneath the hole where the ice was put in the top of the car. While appellee Stroope was at the northwest corner of the car, bent over and engaged in inspecting the drain pipe, appellant Tate attempted to move a piece of ice from the platform to the car, and in so doing broke the ice in two pieces, and one piece weighing between 25 and 50 pounds fell a distance of about 17 feet, striking appellee in the back and injuring him so that he will be a permanent cripple. The block of ice that Tate was trying to put across the open space between the dock and car was lying about three feet from the edge of the platform, and, in order to give it enough momentum to make it clear the space between the platform and the car, he struck the ice too hard with his pike pole and broke it in two pieces, one piece of ice going into the hole in the car and the other piece falling below and striking appellee. He could and

should have moved the piece of ice back on the platform far enough so that he could have given it sufficient momentum to cause it to go from the platform into the hole in the car without striking it too hard with his pike pole in an effort to put it over from where it was lying within three feet of the edge of the platform.

The evidence thus summarized was sufficient to warrant the jury in finding that Tate was negligent in moving the ice while appellee was on the ground inspecting and unchoking the drain pipes, as well as in the manner he handled the ice when he attempted to put it in the car.

Since learned counsel for appellants admit that there is sufficient evidence in the record to establish liability against the American Refrigerator Transit Company, and since the record discloses ample evidence to sustain the finding of the jury that Tate was a joint tort-feasor with it, the service upon the American Refrigerator Transit Company in Pulaski County was good, so the trial court did not err in refusing to quash the service upon the American Refrigerator Transit Company, and did not err in submitting the issue of whether Tate was guilty of negligence causing the injury to appellee.

The next and last contention of appellants for a reversal of the judgment is that the judgment is excessive. At the time of the injury, appellee was 29 years of age, strong and healthy, with an expectancy of 36 years, and had been earning $250 a month continuously for eight years. According to the testimony introduced by appellee, which the jury accepted as true, appellee is a complete physical wreck as a result of the injury, and is continuing to grow worse instead of better. His suffering was intense from and after the injury for a long period of time. In view of his helplessness and the pain he has suffered, we are of opinion that the judgment is not excessive.

No error appearing, the judgment is affirmed.

Mr. Justices McHaney and Baker dissent as to the construction of the act, and Mr. Justice Smith is of opinion the verdict is excessive.