BALDWIN v. SEARS.

4-4160

Opinion delivered February 17, 1936.

R. E. *Wiley* and *Henry Donham,* for appellants.

*Pace & Davis, J. H. Lookadoo* and *Tom W. Campbell,* for appellee.

BAKER, J.   The complaint filed in this case alleges an injury received by the plaintiff while employed as a brakeman upon one of the freight trains operated by the appellants, who were engaged in interstate commerce, and the cause of action alleged was one that arose under the Federal Employers' Liability Act of 1908, as amended in 1910.

The allegation is to the effect that on the 9th day of December, 1933, the appellee herein was employed as such brakeman upon a train running from El Dorado to North Little Rock, and, as the train was leaving Camden, after having stopped to take water, and while running from 10 to 15 miles an hour, the appellee attempted to catch and get upon an oil tank car, being car LUX 870, and that a grabiron pulled loose from the running board on the left side at the head end of the car, causing

the appellee to fall from the car, striking his hips and back of his head on the dump on the side of the track and throwing him in the ditch below.

The further allegations are descriptive of the method of the fastening of the ends of these grabirons by the insertions of bolts through the running boards that surround the tanks, and upon the bottom sides of the running boards the bolts go through holes in the ends of the grabirons and are held by nuts. One of these nuts had been lost from a bolt, so used in holding the end of the grabiron, and, as the appellee attempted to climb upon the train, one end of the grabiron came loose, causing him to fall.

The record is voluminous, but the fact is not seriously disputed that whatever injury the appellee suffered was caused in the manner described. The accident occurred in the early morning hours before daylight. No one was near, and the appellee was found after the train had gone, or, at least, a short time afterwards he appeared at the depot where he says he was taken by two colored men who assisted him in getting to that place.

A larger part of the testimony in this record relates to the fact of the injury and to the extent thereof.

The first proposition presented upon appeal and brought here is that the court erred in refusing to quash the jury panel. This matter will be passed without discussion, because the question was settled in the case of *American Refrigerator Transit Co.* v. *Stroope,* 191 Ark. 955, 88 S. W. (2d) 840. This is the same jury, drawn by the same jury commissioners whose eligibility was decided in that case. The question was settled there. The writer was not in accord with that opinion, but the question will not again be reviewed here.

The second proposition raised is that the court erred in refusing to give appellants' requested instructions numbers 2, 3, 4, 5, 6, and 7. These instructions will not be set out. It is sufficient merely to state the effect of them.

Instruction No. 2 was to the effect that if the jury find that there was nothing to indicate to the defendants a defect in the handhold, and that the absence of the nut

from the handhold would not have been ascertained by the use of ordinary care and caution in inspecting the same, then the defendants would not be liable. In discussing this proposition, it may be stated that the train was engaged in interstate commerce and that the particular car on which the injury was alleged to have occurred was moving in interstate commerce. A provision of the Safety Appliance Act, 45 USCA, § 4, as amended, provides:

"It shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grabirons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars." In 1910 an amendment was passed which provided:

"It shall be unlawful for any common carrier, subject to the provisions of this chapter, to haul or permit to be hauled or used on its line, any car, subject to the provisions of this chapter, not equipped with appliances herein provided for, to-wit: all cars must be equipped with secure sill steps and efficient hand brakes; all cars requiring secure ladders and secure running-boards shall be equipped with such ladders and running-board and all cars having ladders shall also be equipped with secure handholds or grabirons on their roofs at the tops of such ladders." (45 USCA, § 11).

The Safety Appliance Act also gave to the Interstate Commerce Commission power to promulgate rules and regulations as to the location or manner of fastening or affixing safety appliances designated in the act. Such regulations admittedly were legal and provided for the location and secure fastening of handholds. This injury occurred, by reason of a violation of the Safety Appliance Act. That act did not make liability dependent upon the exercise of ordinary care by the carrier. In other words, liability is not dependent upon negligence, but arises upon violation of the Safety Appliance Act, which violation is the proximate cause of the injury.

Instruction No. 3 was to the effect that, as this particular car, LUX 870, belonged to the Lion Refining Com-

pany, the only duty that the defendants owed to the plaintiff was to exercise reasonable care and caution in inspecting the car and the handholds. That was not a proper test. The carrier did not have to accept this car into its train with the defective handhold or grabiron that caused the injury. Upon acceptance of the car in that condition, defendants had the same responsibility as if they had been owners.

Instruction No. 4 is to the effect that if the jury should find that the nut was removed from the bolt holding the handhold after the car had been inspected at El Dorado by the inspectors of the defendants, at the time it was placed in the train, and that same had not been removed for a sufficient length of time to have been discovered by the defendants, they should find for the defendant. An examination of this record does not disclose that the affirmative defense was made that the nut was removed after inspection. There is no proof to that effect and only by conjecture could such a conclusion be reached. Substantial evidence is wholly lacking. There is evidence that the bolt had rusty threads where the nut should have been. In the absence of any proof, the jury should not have been invited to speculate and by speculation find that the original bolt, without rust, was removed and a rusty one substituted therefor. If such was the purpose of the refused instruction, it was abstract.

No. 5 is an instruction to the effect that the plaintiff must have exercised reasonable care for his own safety and protection, and that, if he were negligent or failed to exercise the care that a reasonably prudent person would have done under similar circumstances, then he could not recover. In other words, it was an instruction that if the plaintiff were guilty of contributory negligence he would be barred.

No. 7 is an instruction to the effect that if the defect were observable or apparent that plaintiff must have assumed the risk.

Neither the assumption of risk, nor contributory negligence, is a defense in cases of this kind. The Federal

Safety Appliance Act abolished the defense of assumed risk. 4 USCA, § 7.

So also was the defense of contributory negligence abolished in any case wherein the violation by the carrier of the provisions of the act contributed to the injury or death of the employee. 45 USCA, § 53; *Great Northern Ry. Co.* v. *Otos,* 239 U. S. 349, 36 S. Ct. 124; *Grand Trunk Western R. Co.* v. *Lindsay,* 253 U. S. 42, 34 S. Ct. 581.

These statutes impose absolute duties upon carriers engaged in interstate commerce. These duties are not discharged by the exercise of reasonable care. *Chicago, Burlington & Quincy Ry. Co.* v. *United States,* 220 U. S. 559, 31 S. Ct. 612. See, also, *St. Louis Iron Mountain & Southern Ry. Co.* v. *Taylor,* 210 U. S. 281, 28 S. Ct. 616.

Even though the carrier does not own the equipment, it becomes liable for substandard or defective appliances, when it uses them in interstate commerce and injuries result to employees therefrom. 2 Roberts Federal Liability of Carriers, p. 1265. *Johnson* v. *Great Northern Ry. Co.,* 178 Fed. 643; *U. S.* v. *Chicago Great Western Ry. Co.,* 162 Fed. 775.

The authorities herein cited justify the instructions given and the refusal to give those requested by appellants. It is not necessary to attempt a further analysis of the instructions or to support our position by further citations.

Only one other matter is presented for our consideration. We are asked to say that the verdict is excessive. Upon what theory? The testimony of experts, who say there is no injury as the result of the fall. This testimony is contradicted by other experts who are equally positive the appellee is totally disabled and incapacitated to earn a living or to enjoy whatever of life remains, but doomed to grow progressively worse with added suffering till death.

There is an imposing array of witnesses, scholarly men, at the top of one of the great learned professions. They brought to the jury perhaps 30 or more X-ray pictures. They "read" or "interpreted" these pictures. They expounded their theories elaborately and conclu-

sively, with resulting confusion and irreconcilable conflict.

We are helpless. We know of no method to check for truth and error. Counsel have not suggested any, though they are experts also in their sphere. We say that in all seriousness, but for a purpose.

Expert testimony is offered, according to theory, to explain to the jury matters discernible or understood only by reason of special learning. It would be hard to discover a better example of the futility of expert testimony than is found here.

Appellants have the naive consolation that the verdict is the composite conclusion of 12 practical citizens. It is supported. *Western Union* v. *Turner,* 190 Ark. 97, 77 S. W. (2d) 633.

No error is shown. Affirmed.