SAMMARCO and another, Respondents, vs. BOYSA, Appellant.

*September 13—October 11, 1927.*

*Constitutional law: Reasonable classification: Ordinance regulating use of future erected buildings.*

1. A city ordinance providing that automobiles carrying a volatile, inflammable liquid shall not be placed in wooden buildings of a certain character, but that nothing therein contained should prevent the owner of any existing garage from keeping not more than two automobiles for his own use in a portion of a building, does not deny the equal protection of

the law because of the exception in favor of owners of
existing garages.  p. 646.
2. There is a difference between prohibiting the erection of un-
desirable buildings, or buildings to be devoted to an undesir-
able purpose, and compelling the destruction of existing
buildings or prohibiting a continuance of the use to which
such buildings are presently devoted, which furnishes a basis
for a city ordinance prohibiting the use to which new build-
ings may be put, but exempting existing buildings from the
terms of the ordinance.  p. 644.

APPEAL from a judgment of the circuit court for Mil-
waukee county: OSCAR M. FRITZ, Circuit Judge.  *Affirmed.*

Action by *Michael Sammarco* and *Carmella Sammarco*
against *Caroline Boysa* praying for an injunction restrain-
ing the said *Caroline Boysa* from placing or storing an auto-
mobile containing a volatile, inflammable liquid in a wooden
building in the city of Milwaukee.  From a judgment in
favor of the plaintiffs granting a permanent injunction the
defendant appeals.

The cause was submitted for the appellant on the briefs
of *John P. Retzer* of Milwaukee, and for the respondents
on the brief of *Albert M. Kelly* of Milwaukee.

OWEN, J.  The only question presented upon this appeal
is the constitutionality of sec. 307 of article 25 of the city
ordinances of the city of Milwaukee, which provides:

"(a) Automobiles carrying a volatile inflammable liquid
shall not be placed in a building of wood which shall be more
than fifteen feet high, used for more than four automobiles,
or located less than ten feet from any other building.

"(c) Nothing herein contained in this section shall pre-
vent the owner of any existing garage from keeping not
more than two automobiles for his own use in a portion of
a building. . . ."

The defendant contends that the ordinance is unconstitu-
tional because it denies the equal protection of the law in
that it exempts from its inhibition owners of existing ga-

rages, who are permitted to keep more than two automobiles for their own use in a portion of a building. Similar ordinances have been condemned in *Tugman v. Chicago,* 78 Ill. 405; *Chicago v. Rumpff,* 45 Ill. 90; *State v. Beattie,* 16 Mo. App. 131; *Weadock v. Judge,* 156 Mich. 376, 120 N. W. 991; *In re Dondero,* 19 Cal. App. 66, 124 Pac. 884. The ordinances involved in the above cited cases were condemned because, it was held, to prohibit the erection or new use of a building of a certain character within a specified area, while permitting a continuance of the existence of similar buildings already constructed, or the use to which they were then devoted, constituted a denial of the equal protection of the law. A perusal of these cases gives the impression that, in order to constitute equal protection of the law, laws must affect every man, woman, and child exactly alike. That this is not true is just as trite and fundamental as is the proposition that all persons are entitled to the equal protection of the law.

In the decisions above cited no weight was given to the power of the legislature to create classes germane to the purposes of the legislation and to provide that all persons within the class should be treated alike. There is a manifest difference between prohibiting the erection of undesirable buildings, or buildings to be devoted to undesirable purposes, within a given area, and compelling the destruction of buildings already constructed or prohibiting a continuance of the use to which they may presently be devoted. In the one case the owner has made expenditures in the construction of his building or in fitting up his premises for the use to which they are devoted, while in the other case no such expenditures have been incurred. This circumstance furnishes an unimpeachable basis for classification for the purposes of legislation such as we are construing. That the legitimacy of such classification has received general and widespread recognition with reference to related subjects is apparent

upon casual reflection. A familiar example is the establish-
ment of fire limits in cities. Ordinances establishing such
limits quite universally provide that the inhibitions against
wooden and inflammable buildings shall be prospective only,
existing buildings being exempted from the provisions of the
ordinance. Regulations relating to the installation of
plumbing, electric wiring, etc., also customarily apply only to
buildings to be erected in the future. The law limiting the
heights of buildings, recently under consideration by this
court, was held to be prospective only and not to apply to
buildings in the course of construction at the time the law
was enacted, although the operation of the statute was not
so limited in express terms. *Building Height Cases,* 181
Wis. 519, 195 N. W. 544. In that case we quoted approv-
ingly from 25 Ruling Case Law, 787, that "Every law that
takes away or impairs rights that have vested under existing
laws is generally unjust and may be oppressive. Hence such
laws have always been looked on with disfavor."

In *Bonnett v. Vallier,* 136 Wis. 193, 116 N. W. 885, the
so-called Tenement House Law (ch. 269, Laws 1907) was
held unconstitutional. However, the fact that it applied
only to tenement houses thereafter to be erected was not
even urged as a ground of its unconstitutionality. So-called
zoning laws and ordinances which have been held constitu-
tional in many states of the Union (see *State ex rel. Carter
v. Harper,* 182 Wis. 148, 196 N. W. 451, and cases there
cited) and more recently by the supreme court of the United
States (*Euclid v. Ambler Realty Co.* 47 Sup. Ct. 114), quite
generally contemplate the accomplishment of the purposes of
such laws by regulations prospective in character, leaving
existing buildings and businesses undisturbed. Indeed, the
Justices of the Massachusetts court, in expressing the opin-
ion that a proposed zoning law pending before the legisla-
ture of that state was constitutional, referred to the fact that
"there is recognition in section 7 that rights already acquired

by existing use or construction of buildings in general ought not to be interfered with." 234 Mass. 606.

To assert that the ordinance here under consideration denies the equal protection of the law would not only defeat the purpose of zoning laws in general but it would amount to a declaration that society is powerless to prevent the growth and development of an evil without completely stamping out the evil. It has been said by this court that "an attempt of the legislature to suppress or minimize an evil is not to be held innocuous because it does not entirely eradicate it." *Price v. State,* 168 Wis. 603, at p. 612, 171 N. W. 77.

The foregoing abundantly demonstrates that both lawmakers and courts have widely held the belief that consideration for existing property rights furnishes a legitimate basis for classification with reference to legislation such as this. Indeed, laws of this character are more frequently attacked because they invade existing property rights, as is illustrated by *Nelson v. State,* 167 Wis. 515, 167 N. W. 807. We have no hesitation in holding the exemption contained in the ordinance we are considering as a reasonable and legitimate exercise of legislative power, and in pronouncing the ordinance immune from the assault here made upon it.

*By the Court.*—Judgment affirmed.