STATE BANK OF DRUMMOND, Appellant, v. NUESSE, Commissioner of Banks, Respondent.

*February 8—March 7, 1961.*

For the appellant there were briefs by *Stewart G. Honeck* of Milwaukee, attorney, and *Harry F. Franke* of Milwaukee, and *John J. Walsh* of Madison of counsel, and oral argument by *Mr. Honeck*.

For the respondent the cause was argued by *Roy G. Tulane,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

DIETERICH, J. The appellant-petitioner attacks the validity of sec. 221.04 (1) (f), Stats., as amended by ch. 101, Laws of 1947, which prohibits any bank from establishing a branch office or bank station after a certain date, but which allows banks that had branch offices or stations already established prior to May 17, 1947, to continue same, because in its passage there was a failure to obtain a two-thirds

vote of all the members elected to each house of the legislature as required by sec. 4, art. XI of the Wisconsin constitution. [1]

The undisputed facts are that William Banach was elected on April 22, 1947, to fill a vacancy in the assembly, thereby bringing the membership to its legally authorized strength of 100. [2] On April 24, 1947, the assembly passed Bill No. 77, S., which amended ch. 101, Laws of 1947. Sixty-six assemblymen voted for the bill, 12 opposed it and 21 were absent or abstained from voting. Banach did not take his oath of office as a legislator until April 29, 1947, which was five days after the final assembly vote.

The appellant-petitioner contends that Banach was a "member elected" to the assembly and he should have been counted within the meaning of the phrase "the vote of two thirds of all the members elected."

Sec. 28, art. IV of the Wisconsin constitution, [3] requires members of the legislature before entering upon the duties of their office to take and subscribe to an oath or affirmation to support the constitution of the United States and the constitution of the state of Wisconsin, and further that they will faithfully discharge the duties as members of the legislature to the best of their ability.

---

[1] Sec. 4, art. XI. "The legislature shall have power to enact a general banking law for the creation of banks, and for the regulation and supervision of the banking business, provided that the vote of two thirds of all the members elected to each house, to be taken by yeas and nays, be in favor of the passage of such law."

[2] Sec. 2, art. IV. "The number of the members of the assembly shall never be less than fifty-four nor more than one hundred. The senate shall consist of a number not more than one third nor less than one fourth of the number of the members of the assembly."

[3] Sec. 28, art. IV. "Members of the legislature, and all officers, executive and judicial, except such inferior officers as may be by law exempted, shall before they enter upon the duties of their respective offices, take and subscribe an oath or affirmation to support the constitution of the United States and the constitution of the state of Wisconsin, and faithfully to discharge the duties of their respective offices to the best of their ability."

The popular or reasonable import of words furnishes the general rule for the interpretation of public laws. The plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or hidden sense. The words, "before they enter upon the duties of their respective offices, take . . . an oath" are direct, unambiguous expressions and mandatory and leave no room for construction.

Banach could not enter upon the duties of his office and one of these duties consisted of his exercising his right to vote. This right to vote came into being on April 29, 1947, when he took his oath of office. The bill was passed on April 24, 1947. It therefore follows that Banach was not a member of the legislature and had no vote. He was an assemblyman-elect until the day he took his oath of office.

The appellant-petitioner next challenges the constitutionality of sec. 221.04 (1) (f), Stats., for the following reasons:

1. The law violates sec. 1, art. I of the Wisconsin constitution, and sec. 1 of the Fourteenth amendment of the United States constitution, in that it denies petitioner equal protection of the laws as well as due process.

2. The statute is arbitrary and discriminatory.

3. The classification adopted is not germane to the purpose of the law.

It is settled by unanimous legal authorities and conceded by both sides that "unless otherwise provided by statute a bank has no right to establish branch banks." 9 C. J. S., Banks and Banking, p. 87, sec. 55. The same authority continues: "As a state may prohibit branch banks entirely, it may make any regulations applicable to them, short of prohibition, which are reasonable and uniform, . . . The state is the only one who may question the legality of maintenance of a branch bank."

By an amendment to the constitution in 1902, certain provisions were repealed and the present sec. 4, art. XI, which authorizes the regulation of the banking business by a general

banking law, became a part of our state constitution. The controversy thus rests upon fundamental principles of the power of the legislature for drawing a distinction between an old business and a new one and the limitations upon that power. The question in the present case then, is not one of authority, but of its appropriate exercise. It is a legislative decision, a policy decision, and must be respected by the court as long as it is founded on a reasonable basis. *State ex rel. Risch v. Trustees* (1904), 121 Wis. 44, 98 N. W. 954; *Servonitz v. State* (1907), 133 Wis. 231, 113 N. W. 277; *Maercker v. Milwaukee* (1912), 151 Wis. 324, 139 N. W. 199; *Waldum v. Lake Superior T. & T. R. Co.* (1919), 169 Wis. 137, 170 N. W. 729; and *Wait v. Pierce* (1926), 191 Wis. 202, 209 N. W. 475.

If any one proposition could command the universal assent of the courts, we might expect it would be this—that banks are quasi-public institutions and that laws and regulations affecting banks are framed in the public interest. *Hawkins Realty Co. v. Hawkins State Bank* (1931), 205 Wis. 406, 236 N. W. 657.

It is clear that in determining claims of unconstitutional discrimination and the denial of alleged rights, a distinction must be drawn between a lawful business in which one has the right to engage and other types of business which may be carried on only as a result of legislative grace. The right to engage in banking in the state of Wisconsin is purely a matter of such legislative grace.

In *Kiley v. Chicago, M. & St. P. R. Co.* (1910), 142 Wis. 154, 159, 125 N. W. 464, it is stated:

"It is the class, considered broadly as a class, which must possess the distinguishing differences of situation calling for different legislation, not every individual in the class."

In *Price v. State* (1919), 168 Wis. 603, 613, 171 N. W. 77, this court held:

". . . that as to matters of classification the legislature has a very broad discretion, and that its judgment with reference thereto will be respected and enforced by the courts unless the classification is so arbitrary that there is no conceivable basis in reason therefor."

In the instant case the facts disclose that the subject of branch banks and branch stations is of such great public interest that it has a direct bearing upon the economic life of the state. The classification of permitting branch banks and stations that existed prior to the enactment of sec. 221.04 (1) (f), Stats., to continue is not an unlawful discrimination or an illegal classification so as to constitute a denial of the equal protection of the law under the Fourteenth amendment of the United States constitution or the constitution of the state of Wisconsin. *Randles v. State Liquor Control Board* (1949), 33 Wash. (2d) 688, 206 Pac. (2d) 1209, and *Price v. State, supra.*

In its decision the trial court stated:

"In the instant case it is conceded and the records indicate that there are some 555 banks in the state of Wisconsin. Of this number 86 banks have a total of 136 branches or stations. These 86 banks with existing branches or stations have total deposits of $1,638,932,000 or 37.3 per cent of the total of all deposits of all the banks in the state. Consequently when the legislature adopted ch. 101, Laws of 1947, it must be presumed that they gave thought to the economic dislocation, to say nothing of the prejudice to existing property rights, which would have occurred had there been a complete ban imposed against branch banking."

We agree with the trial court's conclusion and accept as adequate the reasons advanced to support it.

There can be no doubt that the legislature determined that a halt must be called before the tangle became so intricate that it could no longer be unraveled. This court recognized that such factors form a proper and equitable basis for the

purpose of classification with respect to regulatory legislation. These aspects are clearly stated in *Sammarco v. Boysa* (1927), 193 Wis. 642, 215 N. W. 446. The court said (p. 644):

"A perusal of these cases gives the impression that, in order to constitute equal protection of the law, laws must affect every man, woman, and child exactly alike. That this is not true is just as trite and fundamental as is the proposition that all persons are entitled to the equal protection of the law.

"In the decisions above cited no weight was given to the power of the legislature to create classes germane to the purposes of the legislation and to provide that all persons within the class should be treated alike. There is a manifest difference between prohibiting the erection of undesirable buildings, or buildings to be devoted to undesirable purposes, within a given area, and compelling the destruction of buildings already constructed or prohibiting a continuance of the use to which they may presently be devoted. In the one case the owner has made expenditures in the construction of his building or in fitting up his premises for the use to which they are devoted, while in the other case no such expenditures have been incurred. This circumstance furnishes an unimpeachable basis for classification for the purposes of legislation such as we are construing."

In *Werlein v. Milwaukee E. R. & T. Co.* (1954), 267 Wis. 392, 66 N. W. (2d) 185, a statutory amendment required that motor vehicles be equipped with safety glass, but excepted trackless trolley buses constructed before a certain date. This court held the statute did not make an unreasonable classification, that statutory classifications based upon time are generally recognized as valid.

The appellant contends that ch. 101, Laws of 1947, violates the due-process and equal-protection clauses of the state and the United States constitutions, because an exception made in favor of banks having branches at the cutoff date. The

legislature must be presumed to have given thought that the economic dislocation which would have occurred had there been a complete ban could seriously have affected the public welfare. Debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment. In exercising its authority the legislature intended to prevent the hazards of monopoly due to excessive numbers of branch banks and this was manifestly within the broad range of legislative discretion. It certainly was not essential for the legislature in order to prevent the creeping paralysis of branch banking that it eliminate all existing branch banks. The legislature had a right to believe that a continuance of further branch banks would subject the state to an intolerable situation. The state and United States constitutions do not require or compel the state to destroy all branch banks and stations existing and created before the passage of the law in the state's efforts to regulate monopolistic conditions. The state's economy is entitled and must be protected fully from the threats of undue concentration and monopoly in banking, and the legislature enacted ch. 101, Laws of 1947, for that very purpose.

In the record every ingredient of a complete and legitimate reason existed for recognizing the justification for the classification, the branch banks would lose the capital invested; the community would suffer the discomfort of the sudden enforced disorganization of an institution to which it was accustomed. In *Louisville Gas Co. v. Coleman* (1928), 277 U. S. 32, 41, 48 Sup. Ct. 423, 72 L. Ed. 770, Mr. Justice HOLMES said that when a line or point has to be fixed, and "there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark."

The purpose of the constitutional provision guaranteeing due process of law and equal protection of law is to prevent

arbitrary deprivation of life, liberty, or arbitrary spoliation of property and to require equal protection and security for all under like circumstances in enjoyment of their personal and civil rights. The enactment by the legislature of ch. 101, Laws of 1947, which amended sec. 221.04 (1) (f), Stats., does not deny due process or equal protection of the laws and is constitutional.

*By the Court.*—The judgment and orders are affirmed.

BROADFOOT, BROWN, and CURRIE, JJ., took no part.