ARK. STATE HIGHWAY COMM. *v.* HIGHTOWER.

5-3333                    383 S. W. 2d 279

Opinion delivered November 2, 1964.

*Lee C. Allen, Lindsey J. Fairley & Mark E. Woolsey,* for appellant.

*Felver A. Rowell, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. The issue on this appeal is the validity or non-validity of a certain minute order which was adopted by the Arkansas State Highway Department, and which relates to the construction of access driveways to state highways from abutting property. The Chancellor found that the regulation, herein question, was discriminatory under the Fourteenth Amendment to the United States Constitution, and the equal protection clause of the Arkansas State Constitution. With this finding, the Highway Department's complaint against appellees was dismissed, and, from the decree so entered, appellant brings this appeal.

On June 28, 1961, Minute Order No. 4161 was adopted by the commission.[1] This order sets out the requirements for construction of access driveways, and, *inter alia,* provides for the proper width of such driveways, and for safety zones; it prescribes the length of such zones, the type of curbs, or posts, that shall be used, and other factors relating to safety. The regulation only applies to new construction, and, under the order, those interested in constructing access driveways from their property to the highway are required to obtain a permit from the department. Appellees applied for a permit, which was granted. The permit provided for the erection of four safety islands with three entrances into the property between the islands, and further provided for the erection of concrete curbs around the safety islands. After accepting the permit, appellees proceeded to build the access driveways, but refused to construct the islands called for in the permit. Marion Hightower stated that it would be "awfully expensive" to build concrete curbing; that, in his opinion, there was no reason for the safety islands. The court, in holding with appellees, commented that the evidence reflected that property owners with driveways in existence prior to the adoption of the order were not required to conform to the standards (for driveways) sought to be imposed on appellees in this case. By written opinion, the court then stated:

"From the foregoing, it will be seen that the facts in this case are not in dispute. The minute order, which has the effect of a statute, is a valid exercise of the police power of the state. See *Arkansas State Highway Commission* v. *City of Little Rock,* 227 Ark. 660, 300 S.W. 2d 929 (1957). As a factual finding, both from the testimony, and a view of the premises, it is found that the required islands would contribute to the safety of the

[1] Ark. Stat. Ann. § 76-201.5 (Repl. 1957), Sub-section (m) authorizes the commission to "adopt reasonable rules and regulations from time to time for the protection of, and covering traffic on and in the use of the State Highway System, and in controlling use of, and access to, the highways, except that no provision contained herein shall be construed as replacing the existing 'rules of the road.'" There is no contention in this litigation that the minute order does not have the same effect as an enacted statute.

highway at this point and are reasonable under the circumstances.

"The defendants have raised the issue that the order is discriminatory, apparently under the 14th amendment to the United States Constitution and under the equal protection clause of the Arkansas Constitution of 1874, (Article 2, Section 3).      *    *    *

"Although no cases from Arkansas have been found, it appears to be the law that an abutting owner has the right to construct driveways connecting with a highway, subject to such reasonable regulations as public authority may prescribe. [Citing authority]      *    *    *

"It thus appears that the question is whether or not the order involved, by requiring permits only for new driveways thus excepting existing driveways from its terms, amounts to an unconstitutional discrimination. The question might be stated whether or not the classification of driveways existing prior to the effective date of the order, (June 28, 1961), as being exempt from the order as proposed to driveways created subsequent to that date, is a reasonable classification.

"I am holding that the order by exempting existing driveways does amount to an unconstitutional discrimination. In this respect I might mention that my limited research has uncovered cases holding both ways on this question.      *    *    *

"It appears to this court that the order would be discriminatory if enforced against these defendants, when no attempt is being made to enforce it against driveways in existence prior to its adoption. Particularly this is so in view of the fact that a filling station without such safety islands is directly across the road from the property is question. It also appears that if such an order as to driveways is to be enforced at all, it will have to be enforced against all driveways and not simply against those sought to be constructed subsequent to the effective date of the order. As a factual matter, it appears that there is a definite need for such driveways and islands at all entrances to the highways of this state and

that such an order, if applied fairly, would be reasonable and necessary for the safety of the highways.''

It will be noted that the court found that the required islands would contribute to the safety of the highway at the point in question; that such a requirement is reasonable, and that a definite need exists for such driveways and islands at all entrances to the highways of the state. The holding of invalidity as to the order is based solely on the finding that appellees were being discriminated against because owners of stations constructed prior to the order were not covered by the regulation.

We think the learned trial court erred in reaching this conclusion, and we are of the view that appellees cannot prevail in this litigation for two reasons.

First, we do not agree that appellee is relieved of the requirements of the order simply because owners of other stations (built before the order went into effect) are not affected by its provisions.

At the outset, let it be said (as stated by the trial court) that there is authority on both sides of this question; in fact, several cases are cited by opposing counsel in support of the respective positions taken, but we are definitely of the view that the order is not invalid as being discriminatory. In reaching this conclusion, there are certain basic tenets that have been recognized. First, the general rule is that statutes will be considered to operate prospectively only, unless a legislative intent to the contrary is clearly expressed, or strongly implied, from the language used. See *Chism* v. *Phelps,* 228 Ark. 936, 311 S.W. 2d 297, and authorities cited therein. In fact, it appears, if the regulation in question affected stations already in operation at the time of the rendition of the order, that fact itself might render such order invalid. As stated in 50 Am. Jur., Section 477, Page 493:

''Because every law that takes away or impairs vested rights under existing laws, is generally reprehensible, unjust, oppressive, and dangerous, such retroactive laws have not been looked upon with favor, but with dis-

favor, so that courts are loath to give a statute such effect. To the contrary, a prospective interpretation of statutes affecting substantive rights is favored. It is a maxim, which is said to be as ancient as the law itself, that a new law ought to be prospective, not retrospective, in its operation (*nova constitutio futuris formam imponere debet, non praeteritis*)."

In 136 A.L.R. 207 is found an annotation pertinent to the principle at issue in this litigation:

"With respect to the regulation of buildings and businesses in the interest of the public health or safety, the courts in a number of cases have held valid and constitutional legislation which in terms excepted existing buildings or business from its regulatory provisions."

In the case of *Sammarco v. Boysa*, 193 Wis. 642, 215 N.W. 446, 55 A.L.R. 370, the Wisconsin court said:

"There is a manifest difference between prohibiting the erection of undesirable buildings, or buildings to be devoted to undesirable purposes within a given area, and compelling the destruction of buildings already constructed or prohibiting a continuance of the use to which they may presently be devoted. In the one case the owner has made expenditures in the construction of his building or in fitting up his premises for the use to which they are devoted, while in the other case no such expenditures have been incurred. This circumstance furnishes an unimpeachable basis for classification for the purposes of legislation such as we are construing . . . To assert that the ordinance here under consideration denies the equal protection of the law would not only defeat the purpose of zoning laws in general, but it would amount to a declaration that society is powerless to prevent the growth and development of an evil without completely stamping out the evil."

Here, in this case, the state, under appellees' theory, would be powerless to promulgate regulations of a progressive nature, though the regulations were entirely prospective in effect.

Let it be remembered that there is a distinct difference between the effect of the regulation on the owner of a business already existing at the time of the order, and the effect upon an individual who contemplates establishing a business after the rendition of the order.

In the first instance, a vested right would be disturbed by the new regulation—a regulation not in effect, not contemplated, when the owner of the business built his establishment. To compel compliance would probably mean the expenditure of a considerable sum of money by the owner, an expense unforeseen at the outset. But the individual who contemplates constructing an establishment *after* the new regulation, enters upon the venture "with his eyes open," *i.e.*, with full knowledge of the probable cost of compliance. Certainly, he is not compelled to enter into the new business venture, and the cost of compliance with requirements can be taken into consideration in determining whether to proceed. In *Newman* v. *Mayor of City of Newport*, 57 A. 2d 173, a city ordinance provided that a person owning land abutting upon any public street or highway in the city of Newport, and who desired an entrance or driveway over a sidewalk adjoining his land, should, after certain preliminary requirements, file an application for authority to construct the driveway. Appellant filed such an application, and it was denied. On appeal, Newman contended that the city ordinance was unconstitutional for several reasons, including the fact that it did not apply to *existing* driveways. In disposing of this contention, the Supreme Court of Rhode Island said:

"The constitutionality of the ordinance is further questioned on the ground that by its terms it does not apply to existing driveways and therefore gives owners and occupants of existing business properties an unfair economic advantage, and denies to petitioners the equal protection of the laws. The mere statement of this proposition shows that it merits little consideration. We are not concerned with the economic advantage that business places existing at the time of the passage of the ordinance may have derived from its enactment."

Were it otherwise, appellees still could not prevail in this litigation, for we think they are precluded from challenging the validity of the minute order. Appellees applied for authority to construct access driveways to the highway, and sought a permit for this purpose. The permit was granted, and accepted by the appellees. Mr. Hightower was entirely familiar, or could have been, with the requirements therein set forth, including the provision for the safety islands. Appellees accepted benefits granted by the permit (construction of the driveways), and, accordingly, we do not think the Hightowers are in a position to attack the validity of the order, or to question any requirement included in the permit. In *St. Louis Public Service Company* v. *City of St. Louis,* 302 S.W. 2d 875, the Missouri Supreme Court said:

"The rule is well settled that one voluntarily proceeding under a statute or ordinance, in claiming benefits thereby conferred, will not be heard to question its validity in order to avoid its burdens. The same or similar rules have been applied in litigation involving many different types of instruments, licenses, or other transactions. The designation used in referring to this rule or doctrine is obviously unimportant. It is frequently called an estoppel. However, it is akin to the rule against assuming inconsistent positions and it involves the principles of waiver, election, and ratification rather, perhaps, than being limited to the precise principles of equitable estoppel. Regardless of the name or principle designated, the result is clearly the same. It precludes one who accepts the benefits from questioning the validity of the accompanying obligation. For convenience, we will, hereinafter refer to this rule or doctrine as an estoppel."

A similar holding was rendered in the Nebraska case of *James H. Dailey Estate* v. *City of Lincoln, et al.* 185 N.W. 332. There, the court stated:

"We are of the opinion that the facts stated in the petition do not raise the legality, illegality or constitutionality of the complained of provisions of this building ordinance. The plaintiff could not, after having ap-

plied for and accepted from the building inspector a permit to build a wall twelve inches thick, build one eight inches thick, and, when ordered to show cause why the permit granted should not be revoked or canceled, for that reason plead that the provisions of the building ordinance requiring him to agree to build in accordance with the plans and specifications were illegal and void and not binding upon him. Nor could the plaintiff, after having applied for, received and accepted from the building inspector a permit, question his authority to grant the same. Nor could it, after having agreed that if it did not build in accordance with the plans and specifications submitted its permit might be canceled by the council, question the council's authority to cancel its permit. By its conduct it is estopped from questioning the right of the building inspector to issue the permit granted on its application and the council's authority to revoke the same for not building in accordance with the plans and specifications. As between the plaintiff and defendant, the provisions of the sections complained of cannot be questioned by plaintiff. If the plaintiff desired to question the legality of this building ordinance, it should have done so before it applied for, received and accepted a permit thereunder.''

We think the language in these cases is apropos in the instant litigation, and appellees, having accepted the permit, are not now in a position to question the complete validity of the order.

It is also asserted that Minute Order No. 4161, insofar as the safety islands are concerned, provides alternate methods of construction, viz, concrete curbs, or posts, but that the permit issued to Hightowers requires the use of concrete curbs. This argument likewise is completely answered by the preceding paragraphs. In fact, the application signed by Marion Hightower requests permission to construct driveways as described in the permit.

Reversed.