The Honorable Jodie Mahony State Senator 106 W. Main, Suite 406 El Dorado, AR 71730-5693
Dear Senator Mahony:
I am writing in response to your request for my opinion on the application of Act 1176 of 1999 (the "Act"), which provides that to be eligible to receive catastrophic leave benefits, a state employee, "at the onset of the illness or injury, had to his or her credit at least eighty (80) hours of combined sick and annual leave and has exhausted all such leave." You have asked me to address the following hypothetical:
 A long-time, valued state employee of the Department of Human Services who has never abused the leave policies of the state has open-heart surgery six months prior to the effective date of the statute, April 4, 1999 (the employee has over 80 hours and has exhausted it). The state employee goes back to work at Human Services as quickly as possible. However, the heart illness continues. At various times stints are required to be installed and determination is made that the heart is not working quickly enough. This causes times when catastrophic leave is necessary in order to keep body and soul together. Her doctor's opinion is that the heart condition and all procedures and conditions occurring subsequent to the initial diagnosis and treatment are part of one illness or injury.
You have asked me to address two questions:
 1. Can the new statutory language appropriately be used to deny the state employee catastrophic leave requested after the effective date of the act arising from an illness which has been chronic and continuing from six months before the effective date until a year after the effective date?
 2. Does the previously cited language that "a state employee have 80 hours of accumulated leave and use it" refer to each and every request for catastrophic leave arising from the same illness, or does it refer to each time catastrophic leave is required for a new illness or injury?
RESPONSE
In my opinion, the answer to your first question is "no." With respect to your second question, I believe the quoted language refers to catastrophic leave requested for a new illness or injury.
Question 1: Can the new statutory language appropriately be usedto deny the state employee catastrophic leave requested after theeffective date of the act arising from an illness which has beenchronic and continuing from six months before the effective dateuntil a year after the effective date?
According to your hypothetical, the employee first received catastrophic leave before the Act was enacted. At that time, A.C.A. § 21-4-203(4) defined "catastrophic illness" as follows:
 "Catastrophic illness" means a medical condition of an employee as certified by a physician that requires an employee's absence from duty for a prolonged period of time and which results in a substantial loss of income to the employee because of the exhaustion of all earned sick and annual leave.[1]
In construing this statute, I am obliged to "[give] the words their ordinary and usually accepted meaning in common language." Brimer v.Arkansas Contractors Licensing Bd., 312 Ark. 401, 405, 849 S.W.2d 948
(1993). In my opinion, the term "medical condition" clearly describes the heart condition that afflicted your hypothetical employee and caused her repeated absences from work. To be eligible for catastrophic leave, the statute requires only that such a condition cause an employee to be absent "for a prolonged period of time," not that the prolonged period be uninterrupted. I therefore interpret the statute to mean that catastrophic leave remains available until the "medical condition" that occasioned it is resolved. To conclude otherwise would mean that a particularly ambitious worker who prematurely and unsuccessfully attempts to return to work would render herself ineligible for future benefits merely by attempting to return. This cannot have been the legislature's intention. The Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty,336 Ark. 479, 484, 987 S.W.2d 257 (1999); Lawhon Farm Servs. v. Brown,335 Ark. 272, 948 S.W.2d 1 (1998); Citizens To Establish A Reform Party v.Priest, 325 Ark. 257, 926 S.W.2d 432 (1996); Henson v. Fleet MortgageCo., 319 Ark. 491, 892 S.W.2d 250 (1995); Neely v. State, 317 Ark. 312,877 S.W.2d 589 (1994); Death and Total Permanent Disability Trust Fundv. Whirlpool Corp., 39 Ark. App. 62, 837 S.W.2d 293 (1992).
I should note that the issue of whether a given absence is caused by the same medical condition as a previous absence is one of fact upon which this office is neither equipped nor authorized to opine. However, I can opine that under the terms of your hypothetical, which assumes that the various absences were caused by one medical condition, the 80-hour requirement imposed by the Act would simply not apply. The employee's entitlement to leave for her condition vested before the Act was passed, and nothing in the Act suggests that the legislature intended the condition to apply retroactively.[2] Moreover, even if the legislature had made the Act retroactive, the employee would still be entitled to receive post-Act leave because she had actually met the 80-hour requirement when she first sought leave for her ongoing medical condition.
Question 2: Does the previously cited language that "a state employeehave 80 hours of accumulated leave and use it" refer to each and everyrequest for catastrophic leave arising from the same illness, or does itrefer to each time catastrophic leave is required for a new illness orinjury?
As reflected in my response to your first question, I do not believe the Act can reasonably be read as requiring that an employee must accrue and use 80 hours of annual and sick leave for each catastrophic leave taken as the result of a single medical condition. Section 21-4-214 of the Code provides in pertinent part:
(d) An employee may be eligible for catastrophic leave when:
 (1) The employee has been employed by the state for more than two (2) years;
 (2) At the onset of the illness or injury the employee had to his or her credit at least eighty (80) hours of combined sick and annual leave and has exhausted all such leave.
(Emphasis added.) Even as revised, A.C.A. § 21-4-203(4) defines "catastrophic illness" as a "medical condition." On its face, A.C.A. §21-4-214(d)(2) dictates that the 80-hour requirement for eligibility be imposed only" at the onset" of such a condition, not every time it manifests itself.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] The Act amended this statute only by extending eligibility to prolonged absences occasioned by catastrophic injury to an employee's spouse, parent or child.
[2] The Supreme Court has very recently restated the principles that apply in determining whether a statute applies retroactively:
 Retroactivity is a matter of legislative intent. Unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively. Estate of Wood v. Arkansas Dep't of Human Servs., 319 Ark. 697, 894 S.W.2d 573 (1995) (citing Chism v. Phelps, 228 Ark. 936, 311 S.W.2d 297 (1958)). Any interpretation of an act must be aimed at determining whether retroactive effect is stated or implied so clearly and unequivocally as to eliminate any doubt. In determining legislative intent, we have observed a strict rule of construction against retroactive operation and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it, to operate prospectively only and not retroactively. See Arkansas Rural Medical Practice Student Loan Scholarship Bd. v. Luter, 292 Ark. 259, 729 S.W.2d 402 (1987); Chism, supra; Arkansas State Highway Comm'n v. Hightower, 238 Ark. 569, 383 S.W.2d 279
(1964).
 However, this rule does not ordinarily apply to procedural or remedial legislation. Gannett Rover States Publ'g Co. v. Arkansas Industrial Dev. Comm'n, 303 Ark. 684, 799 S.W.2d 543 (1990); Forrest City Mach. Works v. Aderhold, 273 Ark. 33, 616 S.W.2d 720 (1981). The strict rule of construction does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. Harrison v. Matthews, 235 Ark. 915, 362 S.W.2d 704 (1962). Procedural legislation is more often given retroactive application. Barnett v. Arkansas Transp. Co., 303 Ark. 491, 798 S.W.2d 79 (1990). The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed. Arkansas Dep't of Human Servs. v. Walters, 315 Ark. 204, 866 S.W.2d 823 (1993); Skelton v. B.C. Land Co., 260 Ark. 122, 539 S.W.2d 411 (1976) (citing United States v. Colorado Anthracite Co., 225 U.S. 219 (1912)). In addition, we have approved retroactive application of civil statutes, especially those concerning the fiscal affairs of government. For example, we held that the State can retroactively impose taxes. DuLaney v. Continental Life Ins. Co., 185 Ark. 517, 47 S.W.2d 1082 (1932). The United States Supreme Court has also said taxes can be retroactively applied. Reinecke v. Smith, 289 U.S. 172 (1933).
Bean v. Office of Child Support Enforcement, 340 Ark. ___, ___ S.W.3d ___ (February 3, 2000).