2012 Ark. 422

**40 RETAIL CORPORATION, Appellant**

v.

**CITY OF CLARKSVILLE, Appellee.**

No. 12–276.

Supreme Court of Arkansas.

Nov. 8, 2012.

Rehearing Denied Dec. 6, 2012.

Gary S. Edinger; and John Wesley Hall, Jr., Little Rock, for appellant.

Michael Mosley, North Little Rock, for appellee.

COURTNEY HUDSON GOODSON, Justice.

Appellant 40 Retail Corporation (40 Retail) appeals the order entered by the Johnson County Circuit Court granting appellee City of Clarksville's (Clarksville) amended motion for summary judgment. For reversal, 40 Retail contends that the circuit court erred in ruling that principles of waiver and estoppel preclude its challenges to the validity and constitutionality of Clarksville's ordinance regulating sexually oriented businesses. We agree and reverse and remand.

The material facts of this case are not in dispute. 40 Retail is an Arkansas corporation that operates a business known as the "X–Mart Adult Superstore" (X–Mart) located on South Rogers Street in Clarksville. On January 25, 2006, three weeks after X–Mart opened its doors, the Clarksville City Council enacted Ordinance 06–534 establishing licensing requirements and regulations for sexually oriented businesses. Under 06–534, X–Mart is classified as an "Adult Bookstore or Adult Videostore," defined as a "commercial establishment that, as one of its principal purposes, offers for sale or rental books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes, compact discs, digital video discs, slides, or other visual representations that are characterized by their emphasis upon the display of

'specified sexual activities' or 'specified anatomical areas.'" The ordinance requires licensure and the payment of fees, and it provides penalties of up to one year in jail and a $1,000 fine for each violation. Ordinance 06–534 also restricts the location of sexually oriented businesses to Clarksville's industrial districts and provides that such establishments must be 750 feet from other sexually oriented businesses, businesses licensed to sell alcohol, houses of worship, day-care centers, public or private elementary or secondary schools, public bars, and residences. It also contains signage restrictions.

Ordinance 06–534 made provision for nonconforming businesses already in existence at the time of its passage. In this regard, the ordinance provides,

Notwithstanding anything to the contrary in the City of Clarksville's Code, a nonconforming sexually oriented business, lawfully existing in all respects under law prior to the effective date of this ordinance, may continue to operate for three (3) years following that date in order to make a reasonable recoupment of its investment in its current location. At the conclusion of said three (3) years, the use will no longer be recognized as a lawful nonconforming use, provided that a nonconforming sexually oriented business may apply for one or more six-month extensions of the original three-year period upon a showing of financial hardship. An application for an initial extension based upon financial hardship ("hardship exception") shall be made at least sixty (60) days before the conclusion of the aforementioned three-year (3–yr.) period. If a hardship extension is granted, subsequent applications or hardship extensions shall be made at least sixty (60) days before the conclusion of the nonconforming sexually oriented business's current extension period.

The ordinance required applications for hardship extensions to include evidence of purchase and improvement costs, income earned and lost, depreciation, and costs of relocation.

X–Mart operated for three years as a nonconforming sexually oriented business, and once the three-year grace period ended, it applied for and received a single six-month hardship extension. This hardship extension expired on July 17, 2009, and 40 Retail did not apply for another extension. Thereafter, on September 14, 2009, Clarksville filed this action to enjoin the continuing operation of the store. It alleged that 40 Retail's operation of X–Mart should be restrained because the hardship extension had expired and because the store did not comply with the provisions of the ordinance. In response, 40 Retail filed an answer and a counterclaim, in which it sought both declaratory and injunctive relief.[1] In the counterclaim, 40 Retail alleged that the ordinance was invalid because it was not enacted in accordance with various statutory notice procedures. It also claimed that the ordinance violated the Arkansas Civil Rights Act and asserted that the ordinance was unconstitutional, both on its face and as applied, under the Arkansas Constitution. Specifically, 40 Retail urged that Clarksville had not and could not produce any evidence concerning the existence of adverse secondary effects

1. By an order dated February 22, 2011, the circuit court struck 40 Retail's answer and counterclaim, based on its failure to comply with discovery requests and its failure to attend two hearings set by court order. Following the entry of this order, Clarksville filed a motion for summary judgment, asserting that it was entitled to judgment as a matter of law due to 40 Retail's default. On August 12, 2011, the circuit court granted 40 Retail's motion to reconsider and rescinded the order striking the answer and counterclaim.

arising from the store's operation and could not demonstrate a nexus between its constitutionally protected freedom of expression and any alleged negative secondary effects. In this same vein, it also asserted that the data and studies utilized by Clarksville when considering passage of the ordinance were "shoddy." Further, 40 Retail argued that the ordinance was unconstitutional as applied to a "take-out" only retail business. It also contended that the ordinance was unconstitutional because it did not provide a sufficient number of sites within city limits where an adult business would have a reasonable opportunity to operate. On additional constitutional grounds, 40 Retail contested the ordinance's provision requiring applicants to appear in person when applying for a license. 40 Retail also challenged as unconstitutional the signage provisions prohibiting the use of "photographs, silhouettes, drawings, or pictorial representations."

Clarksville followed its answer to the counterclaim with an amended motion for summary judgment. It argued that the undisputed facts showed that X–Mart was currently operating in violation of the ordinance; that the enactment of the ordinance was not defective; and that the ordinance did not infringe upon 40 Retail's rights of free expression. In addition, Clarksville asserted that 40 Retail was estopped from challenging the ordinance because it had acquiesced to its provisions for three years and because it had applied for and accepted a hardship license. The circuit court held a hearing on the amended motion for summary judgment on December 7, 2011, at which the parties argued their respective positions. After receiving a supplemental brief from Clarksville, the circuit court granted the amended motion for summary judgment by an order dated January 5, 2012. In its decision, the court did not address the merits of 40 Retail's challenges to the validity and constitutionality of the ordinance. Instead, citing *Arkansas State Highway Commission v. Hightower*, 238 Ark. 569, 383 S.W.2d 279 (1964), the court found that the doctrines of waiver and estoppel prohibited 40 Retail from challenging the ordinance because it sought and was granted a hardship license and because it had received the benefit of the ordinance's amortization period.

For reversal of the circuit court's decision, 40 Retail argues that the court erred by ruling that principles of waiver and estoppel preclude its challenges to the validity and constitutionality of the ordinance. It contends that these principles do not apply when the law imposes a burden rather than confers a benefit and that a waiver does not occur by submitting to a mandatory law that includes penalties for noncompliance. 40 Retail also argues that, because one does not have to apply for a license in order to bring a facial challenge, it follows that a litigant does not waive his or her constitutional rights by submitting a license application. Further, noting that it was operating in a lawful manner before the ordinance was enacted, it maintains that there can be no estoppel when an applicant receives what he was already entitled to receive. Finally, it contends that its acceptance of benefits under one provision does not waive its right to contest other provisions of the law. Clarksville responds that the circuit court's ruling is well-grounded in the law and that its decision should be sustained.

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548. Ordinarily, upon reviewing

a circuit court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *May v. Akers–Lang,* 2012 Ark. 7, 386 S.W.3d 378. However, in a case such as this one, which does not involve the question of whether factual issues exist but rather the application of legal rules, we simply determine whether appellee was entitled to judgment as a matter of law. *Schultz v. Butterball, LLC,* 2012 Ark. 163, 402 S.W.3d 61.

We begin our analysis with the decision in *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947), where the Supreme Court applied the principle of constitutional estoppel to hold that shareholders of a savings and loan association were estopped from challenging the legislation under which the association was created. The Court commented that "[i]t is an elementary rule of constitutional law that one may not retain the benefits of the Act while attacking the constitutionality of one of its important conditions." *Fahey,* 332 U.S. at 255, 67 S.Ct. 1552. The Court also wrote: "It would be difficult to imagine a more appropriate situation in which to apply the doctrine that one who utilizes an Act to gain advantages of corporate existence is estopped from questioning the validity of its vital conditions." *Id.* at 256, 67 S.Ct. 1552. As the Court would later observe in a similar situation, a litigant "must take the bitter with the sweet." *Arnett v. Kennedy,* 416 U.S. 134, 154, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

This principle is ingrained in our own case law. In *Arkansas State Highway Commission v. Hightower,* 238 Ark. 569, 383 S.W.2d 279 (1964), the case relied upon by the circuit court, at issue was the validity of a minute order issued by the Highway Department regulating the construction of driveways accessing state highways. Hightower had applied for and received a permit to construct a driveway. The permit contained a condition requiring the construction of four islands in completing the project. Hightower claimed that this requirement was discriminatory because it was not made applicable to existing driveways. We rejected the discrimination argument, but we also noted that Hightower was estopped from challenging the minute order because he had accepted the benefit of the permit along with its burdens and was thus in no position to attack the validity of the minute order.

More recently, in *Arkansas State Highway & Transportation Department v. Kidder,* 326 Ark. 595, 933 S.W.2d 794 (1996), the Kidder brothers challenged the provisions of the Highway Beautification Act that prohibited rotating signs. Although the Act contained a grandfather clause that would have been applicable to them, they made no attempt within the time period allowed to obtain a permit that would have permitted them to keep their rotating sign. Instead, once the grace period expired, the Kidders obtained a permit that expressly contained the restriction that the sign could not rotate. Citing *Hightower, supra,* we held that they were estopped from challenging the Act because they had applied for and obtained a permit that contained the restriction. We affirmed that "[i]t is settled that one cannot accept the benefits of a permit and then challenge the conditions of the permit." *Kidder,* 326 Ark. at 602, 933 S.W.2d at 797. *See also, e.g., Searcy Cnty. v. Stephenson,* 244 Ark. 54, 424 S.W.2d 369 (1968) (holding that an unsuccessful candidate was estopped from challenging the constitutionality of a filing fee because he paid the fee voluntarily and did not contest the fee until after the election); *Johnson v. Darnell,* 220 Ark. 625, 249 S.W.2d 5 (1952) (holding that a municipal judge who lost reelection could not challenge the constitu-

tionality of a newly enacted statute under which the election was held because he accepted the benefits of the statute in the form of increased salary and participated in the election); *City of W. Helena v. Patrick*, 185 Ark. 71, 46 S.W.2d 36 (1932) (holding that a police chief appointed to a one-year term set by city ordinance was estopped from challenging the ordinance on the ground that ₈it conflicted with a statute providing for a two-year term of office because of his silence and acquiescence in leaving office and his allowing the appointment of his successor without protest).

Courts in other jurisdictions have also held that the acceptance of benefits under a statute precludes an attack on the statute. For example, in *Hightower, supra,* we relied on the decision in *St. Louis Public Service Company v. City of St. Louis*, 302 S.W.2d 875 (Mo.1957). There, a bus company had held a license for a long period of time and had paid an operating fee pursuant to an ordinance that had been in effect for over twenty-five years. The bus company challenged the law requiring the payment of the fee. After summarizing a number of cases applying estoppel in varying contexts, the Supreme Court of Missouri applied the rule that "[a] person who obtains a license under a law . . . and seeks for a time to enjoy the benefits thereof, cannot afterwards when the license is sought to be revoked, question the constitutionality of the Act under which he obtained the license." *St. Louis*, 302 S.W.2d at 880 (citing *Cofman v. Ousterhous,* 40 N.D. 390, 168 N.W. 826 (1918)). So, too, in *American Bond & Mortgage Company v. United States,* 52 F.2d 318 (7th Cir.1931), the Seventh Circuit applied estoppel to forestall a constitutional challenge to an act of Congress. In that case, the Federal Radio Commission filed suit to enjoin the continuing operation of a radio station that had remained in

business after the Commission had refused to renew the station's license. The radio station argued that the Commission's action was unconstitutional as a taking without just compensation. The court said, "Having sought and secured a government permit or license with attendant benefits, appellants obviously cannot later assert rights which were ₉surrendered in order to secure the permit." *American Bond,* 52 F.2d at 321. *See also Robertson v. Federal Election Comm'n,* 45 F.3d 486 (D.C.Cir. 1995) (candidate who accepted matching funds was estopped from challenging constitutionality of the composition of the commission).

While the acceptance-of-benefits rule of estoppel is firmly rooted, its application has not been uniform. Indeed, this court has recognized that the rule has numerous exceptions. *Terry v. Thornton,* 207 Ark. 1019, 183 S.W.2d 787 (1944). Moreover, since the decision in *Fahey, supra,* the Supreme Court has commented that the estoppel "doctrine has unquestionably been applied unevenly in the past, and observed as often as not in the breach." *Arnett,* 416 U.S. at 153, 94 S.Ct. 1633. In *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988), the Court declined to apply the doctrine to preclude the parents' challenge to fees charged for bus transportation. In defense of the constitutional challenge, the school district argued that the parents were estopped from challenging the fee because they had entered into two contracts for the provision of the services and had partially paid the fee. Noting its previous decision in *Fahey, supra,* the Court found that the situation was not analogous because the holding in *Fahey* was based on the fact that the bank was a creature of statute. The Court said that "we doubt that plaintiffs are generally forbidden to challenge a statute simply because they

are deriving some benefit from it." *Kadrmas,* 487 U.S. at 456–57, 108 S.Ct. 2481. The Court considered the rule inapplicable because the statutory fee imposed a burden without conferring any appreciable benefit.

Further, in *Begin v. Inhabitants of Town of Sabattus,* 409 A.2d 1269 (Me. 1979), the Supreme Judicial Court of Maine reversed the lower court's ruling that a developer was estopped from contesting an ordinance under which he received a permit. The court noted that the estoppel doctrine has exceptions, such as where compliance is deemed involuntary in order to avoid penalties or adverse effects on business, and where an estoppel by acceptance of benefits does not prohibit an attack on a separable portion of a statute. After surveying decisions from other jurisdictions, the *Begin* court observed that "[t]hese cases seem to represent a shifting view of the proper balance of the equities, such that estoppel will infrequently be found to operate against one asserting his or her constitutional rights." The court applied the separability exception but also stated,

> ... we support the modern trend urging courts to be circumspect in applying the estoppel principle. This is particularly so when the State, a regulatory agency, or a municipal subdivision, is seeking to estop one of its licenses or licensee applicants from challenging the constitutionality of the provisions affecting his or her conduct.

*Begin,* 409 A.2d at 1274.

Following its decision in *American Bond, supra,* the Seventh Circuit has commented that the estoppel doctrine is most appropriate when a party seeks to retain the benefits of a governmental act while attempting to invalidate its burdens. *Brockert v. Skornicka,* 711 F.2d 1376 (7th Cir.1983). In *Brockert,* the city had an ordinance requiring city employees to live within the city limits. It also made provision for the grant of a waiver, based on hardship. The employee in question had been granted several waivers, but subsequently was denied a waiver. He challenged the validity of the waiver provision, and in response the city argued that the employee was estopped from doing so because he had applied for and had received the benefit of previous waivers. The Seventh Circuit declined to apply the estoppel doctrine, mainly because the employee did not seek an unfair advantage from the city to do away with a corresponding burden.

Another view is found in *Helbig v. Zoning Comm'n,* 185 Conn. 294, 440 A.2d 940 (1981). There, the Zoning Commission found that Helbig's operation of a commercial boat yard violated a zoning ordinance, and it instructed its compliance officer to seek out a warrant for Helbig's arrest. The court declined to apply the estoppel doctrine to Helbig's challenge to the ordinance where compliance was a mandatory duty and the failure to comply subjected Helbig to penalties.

Against this backdrop in the law, we must decide whether estoppel should be applied under the present circumstances. Although the principle is sound and might prove applicable in a proper case, we conclude that 40 Retail is not estopped from mounting its challenges to the ordinance. X–Mart was already in operation when the city council enacted the ordinance. Its passage provided no benefit to the store. On the contrary, it imposed significant burdens. Thus, unlike the litigants involved in our previous decisions of *Hightower, supra,* and *Kidder, supra,* 40 Retail is not seeking to retain the benefits of legislation while at the same time seeking to rid itself of its burdens. Compliance with the ordinance is mandatory, and vio-

lating the ordinance subjects the business owner to criminal sanctions. Consequently, it cannot be said that 40 Retail's acceptance of the temporary hardship extension was voluntary in any real sense. We are also cognizant of the modern trend spoken of in *Begin, supra,* supporting a relaxation of the estoppel doctrine in favor of reaching the merits of constitutional issues so as not to insulate mandatory legislation from attack. For these reasons, |₁₂we hold that the circuit court erred in ruling that principles of waiver and estoppel prevent 40 Retail's challenges to the ordinance. Accordingly, we reverse and remand for the circuit court to decide the merits of this case.

Reversed and remanded.